**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| TAVERSHIMA SHANDE,<br><br>      Plaintiff,<br><br>    v.<br><br>ZOOX, INC.,<br><br>      Defendant. | Case No. 22-cv-05821-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT, WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART; AND DEFERRING ANTI-SLAPP MOTION**<br><br>[Re: ECF 32] |

This action arises out of a dispute over the ownership of digital content that Plaintiff Tavershima Shande ("Shande") created while employed by Defendant Zoox, Inc. ("Zoox"). Shande was employed to create digital street scenery of San Francisco for Zoox, an autonomous vehicle company that uses realistic simulations for development. During his period of employment with Zoox, Shande also created digital street scenery of San Francisco that he sold through an online marketplace operated by non-party Epic Games, Inc. ("Epic"). Zoox submitted a takedown notice to Epic pursuant to the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C § 512, which resulted in Epic's removal of Shande's digital content. Thereafter, Shande filed this suit against Zoox, asserting federal and state law claims.

Zoox has filed a motion to dismiss certain claims under Federal Rule of Civil Procedure 12(b)(6), and a special motion to strike state law tort claims under California Code of Civil Procedure § 425.16 ("anti-SLAPP motion"). In the event the Court denies its anti-SLAPP motion, Zoox requests that the state law tort claims be dismissed pursuant to Rule 12(b)(6).

For the reasons discussed below, the Rule 12(b)(6) motion is GRANTED as to all claims of the operative first amended complaint ("FAC"), WITH LEAVE TO AMEND IN PART and WITHOUT LEAVE TO AMEND IN PART, and the anti-SLAPP motion is DEFERRED.

## I. BACKGROUND

Shande filed the complaint in this action on October 6, 2022, and filed the FAC on January 3, 2023. He alleges the following: Shande was employed by Zoox as a Staff Technical Artist for approximately five years, from January 2017 through March 2022. *See* FAC ¶ 6. In that role, he used Zoox-supplied software to create digital street scenes for use in training Zoox's autonomous vehicles to navigate an urban environment. *See id.* During the same period, Shande created digital urban scenery for use in videogames, which the FAC refers to as "the Content." *See id.* ¶ 7. Shande registered his copyright in the Content with the United States Copyright Office in October 2022. *See id.* Shande sold and distributed the Content to customers on Epic's Unreal Engine marketplace. *See id.*

Zoox took the position that the Content infringes its rights, and it demanded that Shande stop all sales of the Content. *See* FAC ¶ 9. Shande argued that he created the Content on his own time, without using any material belonging to Zoox, and that the Content does not infringe Zoox's rights. *See id.* However, Zoox rejected Shande's argument and stated that it would treat Shande's refusal to stop selling the Content as a *de facto* resignation of employment. *See id.* Shande refused to stop selling the Content and Zoox terminated his employment. *See id.*

Zoox submitted a takedown notice to Epic pursuant to the DMCA. *See* FAC ¶ 10. Shande alleges that, "In that notice, Zoox falsely communicated to Epic that the Content infringed upon images embedded in its autonomous vehicle software which Shande had helped create as part of his employment with Zoox." *Id.* Epic suspended the sale of Shande's content in response to the takedown notice. *See id.* Shande submitted a counter-notice disputing Zoox's takedown notice, triggering a 10-day deadline for Zoox to file a copyright infringement suit. *See id.* Zoox did not file a copyright infringement suit, and Epic restored the Content for sale on its site. *See id.*

Zoox allegedly had further communications with Epic, in which Zoox represented that: "(1) Shande used knowledge and skills he acquired at Zoox to create the Content; (2) that he began selling the Content on the Unreal Engine marketplace only after his employment with Zoox had concluded; (3) that the Content is owned by Zoox under the work-made-for-hire doctrine under federal copyright law; (4) that copyrightable material created by Shande during non-work

2

hours belongs to Zoox as a matter of law because graphic artists such as Shande have no "after hours" in which to create works of their own; and (5) that Epic was potentially liable under applicable law as a contributory infringer for not removing the Content from its marketplace." FAC ¶ 11. Epic refunded payments for the Content to Shande's customers and advised Shande that Epic would withhold an equivalent sum from the proceeds of other product sales made by Shande through Epic's marketplace. *See id.* ¶ 12.

Based on these allegations, Shande asserts the following claims: (1) declaratory relief; (2) knowing misrepresentation under the DMCA, 17 U.S.C. § 512; (3) infringement of exclusive copyright interest under the Copyright Act, 17 U.S.C. § 501; (4) violations of contract and public policy in violation of California Labor Code § 2870; (5) intentional interference with contractual relations; (6) intentional interference with prospective economic advantage; and (7) violation of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code § 17200.

## II.   LEGAL STANDARD

### A.   Motion to Dismiss under Rule 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (internal quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### B.   Anti-SLAPP Motion under California Code of Civil Procedure § 425.16

"Under California's anti-SLAPP statute, a defendant may bring a special motion to strike a cause of action arising from constitutionally protected speech or petitioning activity." *Barry v. State Bar of California*, 2 Cal. 5th 318, 320 (2017). An anti-SLAPP motion may be brought against state law claims pending in federal court. *See Gunn v. Drage*, 65 F.4th 1109, 1119 (9th Cir. 2023) ("[W]e have repeatedly affirmed the applicability of California's anti-SLAPP statute in diversity cases."); *In re Bah*, 321 B.R. 41, 46 (B.A.P. 9th Cir. 2005) ("[A]pplication of the anti-SLAPP statute to pendent state law claims is appropriate.").

1  "The analysis of an anti-SLAPP motion proceeds in two steps." *Barry*, 2 Cal.5th at 321.
2  "At the first step, the moving defendant bears the burden of identifying all allegations of protected
3  activity, and the claims for relief supported by them." *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016).
4  Only "[i]f the court determines that relief is sought based on allegations arising from activity
5  protected by the statute" is the second step reached. *Id.* At the second step, "the burden shifts to
6  the plaintiff to demonstrate that each challenged claim based on protected activity is legally
7  sufficient and factually substantiated." *Baral*, 1 Cal. 5th at 396.

### III.  DISCUSSION

Zoox asserts that Claim 2 under the DMCA, Claim 3 under the Copyright Act, and Claim 4 under California Labor Code § 2870 should be dismissed under Rule 12(b)(6). In addition, Zoox argues that Claim 5 for intentional interference with contractual relations, Claim 6 for intentional interference with prospective economic advantage, and Claim 7 for violation of the UCL should be stricken under California's anti-SLAPP statute or, in the alternative, dismissed under Rule 12(b)(6). Zoox does not expressly address Claim 1 for declaratory relief, but that claim rises and falls with the others because the Declaratory Judgment Act, 28 U.S.C. § 2201, "only creates a remedy and is not an independent basis for jurisdiction." *Stock W., Inc. v. Confederated Tribes of the Colville Rsrv.*, 873 F.2d 1221, 1225 (9th Cir. 1989). In opposition, Shande contends that his claims are adequately pled under Rule 12(b)(6) and that the anti-SLAPP motion lacks merit.

The Court first addresses the Rule 12(b)(6) motion directed to Claims 2, 3, and 4. The Court next addresses the anti-SLAPP motion and alternative Rule 12(b)(6) motion directed to Claims 5, 6, and 7.

**A.  Rule 12(b)(6) Motion Re Claims 2, 3, and 4**

**1.  Claim 2 – DMCA**

Claim 2, brought under the DMCA, alleges that "Zoox knowingly and materially misrepresented to Epic that the Content infringed imagery contained in Zoox's autonomous vehicle software." FAC ¶ 17. Claim 2 also alleges that "[b]y statute, such a take-down notice may be submitted only based upon a good faith belief that the material in question is infringing." *Id.* Shande claims that he "has incurred damages, costs and attorneys' fees as a result of Zoox's

4

knowingly false representations to Epic." *Id.* ¶ 18.

"[T]he DMCA contains a number of measures designed to enlist the cooperation of Internet and other online service providers to combat ongoing copyright infringement." *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1003 (9th Cir. 2004). As relevant here, the DMCA provides a mechanism for a copyright owner to counter online infringement by submitting a takedown notice to the online service provider. *See id.* The takedown notice must satisfy specific requirements, including among other things "[i]dentification of the material that is claimed to be infringing" and "[a] statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law." 17 U.S.C. § 512(c)(3).

A copyright owner that submits a takedown notice in bad faith is liable for resulting damages incurred by the alleged infringer. *See* 17 U.S.C. § 512(f). The DMCA provides that:

> Any person who knowingly materially misrepresents . . . that material or activity is infringing . . . shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer . . . who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing[.]

17 U.S.C. § 512(f). In order to state a claim under § 512(f), the plaintiff "must allege (1) a material misrepresentation in a takedown notice that led to a takedown, and (2) that the takedown notice was submitted in subjective bad faith." *Moonbug Enter. Ltd. v. Babybus (Fujian) Network Tech. Co.*, 2022 WL 580788, *7 (N.D. Cal. Feb. 25, 2022) (citing *Rossi*, 391 F.3d at 1005). "A copyright owner cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake." *Rossi*, 391 F.3d at 1005. "Rather, there must be a demonstration of some actual knowledge of misrepresentation on the part of the copyright owner" in submitting the takedown notice. *Id.*

It is unclear from Shande's allegations whether Zoox acted with subjective bad faith when it sent the takedown notice to Epic. Allegations in the FAC that are incorporated into Claim 2 indicate that Zoox claims ownership of the Content under the work-made-for-hire doctrine and has consistently asserted ownership of the Content on that basis since the parties' dispute arose. *See* FAC ¶¶ 8-11. Shande's own opposition to the motion suggests that Zoox formed a genuine belief

1   that it owns the Content, referring to Zoox's "delusion" that Shande's "fanciful video game-style
2   depictions of urban environments contained Zoox proprietary information," and asserting that
3   Zoox "jumped to conclusions" when it determined that the Content infringes its rights.  Pl.'s Opp.
4   at 1, ECF 37.  If Zoox subjectively believed the statements in the takedown notice sent to Epic,
5   Zoox cannot be held liable under the DMCA even if those statements ultimately prove to be
6   untrue.  *See Rossi*, 391 F.3d at 1005.  Accordingly, Claim 2 is subject to dismissal, but the Court
7   will grant Shande an opportunity to cure the ambiguity as to whether Zoox acted with subjective
8   bad faith when it sent the takedown notice.
9   The motion to dismiss is GRANTED WITH LEAVE TO AMEND as to Claim 2 under the
10  DMCA.

### 2. Claim 3 – Copyright Act

12  Claim 3 is for copyright infringement.  To prevail on his copyright infringement claim,
13  Shande must show (1) ownership of the allegedly infringed material, and (2) a violation of at least
14  one of the exclusive rights granted to copyright holders under 17 U.S.C. § 106.  *See A&M Recs.,*
15  *Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).  Section 106 grants the owner of a
16  copyright "the exclusive rights to do and to authorize" certain acts with respect to the copyrighted
17  material, including reproduction of the work, preparation of a derivative work, distribution of the
18  work, public performance of the work, and public display of the work.  17 U.S.C. § 106.  Shande
19  alleges ownership of the Content and violation of the exclusive right to distribute and authorize
20  distribution of the Content to the public under 17 U.S.C. § 106(3).  Shande does not allege that
21  Zoox distributed or authorized distribution of the Content, however.  His theory is that Zoox
22  "usurped Shande's exclusive right to distribute copies of his copyrighted work under 17 U.S.C. §
23  106(3)" by asserting ownership of the Content and coercing Epic to suspend sales of the Content.
24  FAC ¶ 20.
25  Shande's theory is not viable.  "[I]n the Ninth Circuit . . . infringement of the distribution
26  right requires 'actual dissemination' of a work."  *Annabooks, LLC v. Issuu, Inc.*, No. 20-CV-
27  04271-CRB, 2020 WL 6873646, at *4 (N.D. Cal. Sept. 24, 2020).  "[A] copyright owner seeking
28  to establish that his or her copyrighted work was distributed in violation of section 106(3) must

6

1  prove that the accused infringer either (1) actually disseminated one or more copies of the work to
2  members of the public or (2) offered to distribute copies of that work for purposes of further
3  distribution, public performance, or public display." *In re Napster, Inc. Copyright Litig.*, 377 F.
4  Supp. 2d 796, 805 (N.D. Cal. 2005). District courts throughout the country have rejected the
5  notion that questioning the validity of a copyright infringes the exclusive right to distribute and
6  authorize distribution of copyrighted material granted in 17 U.S.C. § 106(3). *See, e.g., Cooper v.*
7  *Harvey*, 108 F. Supp. 3d 463, 474 (N.D. Tex. 2015) ("Plaintiff's allegation that Defendant
8  'interfered' with his rights by questioning the validity of his copyright . . . is insufficient to support
9  a claim for infringement."); *Cabell v. Zimmerman*, No. 09 CIV. 10134(CM), 2010 WL 996007, at
10 *3-4 (S.D.N.Y. Mar. 12, 2010) ("[N]o court has ever found copyright infringement under section
11 106 in the absence of an affirmative act relating to the copyrighted material" such as copying,
12 reproduction, or distribution.). Claim 3 is subject to dismissal on this basis. Because Shande's
13 theory of infringement is not viable, amendment of the copyright claim would be futile.
14 The motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND as to Claim 3 for
15 copyright infringement.

### 3. Claim 4 – California Labor Code § 2870

Claim 4 is brought under California Labor Code § 2870, governing employment agreements that assign an employee's rights in an invention to the employer. Under § 2870, a provision in an employment agreement requiring such assignment "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information." Cal. Lab. Code § 2870(a). This prohibition on application of such assignment provisions does not apply, however, "for those inventions that either: (1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) Result from any work performed by the employee for the employer." *Id*. "To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable." Cal. Lab. Code §

2870(b).

Shande asserts that Zoox's assertion of ownership of the Content violates § 2870 and the parties' Employee Proprietary Information and Invention Assignment Agreement ("EPIIAA"), which expressly incorporates § 2870. *See* FAC ¶ 25. According to Shande, he "created the Content on his own time, using his own equipment and without utilizing any Zoox material or technology," and "[t]he Content falls well outside of Zoox's work in the autonomous vehicle industry and did not result from Shande's work for Zoox." *Id*. ¶ 26. Shande alleges that Zoox's efforts to prevent sale of the Content on Epic's marketplace has caused him to suffer irreparable harm and money damages. *See id.* ¶¶ 27-28.

Zoox seeks dismissal of Claim 4 on the ground that § 2870 does not create an independent right of action. The statute does not expressly create a right of action. Shande has not cited, and the Court has not discovered, any cases holding that an employee may bring a freestanding claim for relief under § 2870. Shande's reliance on *Cubic Corp. v. Marty*, 185 Cal. App. 3d 438 (1986), is misplaced. In *Cubic*, an employer sued its former employee for breach of an employment contract providing for assignment of inventions created during the employment term, for declaratory relief regarding ownership of a patent issued to the employee, and other relief. *See Cubic*, 185 Cal. App. 3d at 445. The trial court granted summary judgment for the employer, and the appellate court affirmed, rejecting the employee's contention that the employment contract was unenforceable under California Labor Code § 2870. *See id.* at 452-53, 457. The appellate court's discussion of § 2870 was in the context of the employee's unsuccessful attempt to raise the statute as a defense to the employer's claim for breach of contract and other relief. The *Cubic* court did not hold or even suggest that § 2870 gives rise to an independent right of action. Shande's claim under § 2870 therefore is subject to dismissal. Because § 2870 does not give rise to an independent right of action, amendment of this claim would be futile.

The motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND as to Claim 4 under California Labor Code § 2870.

**B.     Anti-SLAPP Motion/Alternative Rule 12(b)(6) Motion Re Claims 5, 6, and 7**

Zoox has filed an anti-SLAPP motion directed to Claim 5 for intentional interference with

8

contractual relations, Claim 6 for intentional interference with prospective economic advantage, and Claim 7 for violation of the UCL. In the alternative, Zoox moves to dismiss those claims under Rule 12(b)(6).

As discussed above, courts apply a two-step burden-shifting framework to evaluate anti-SLAPP motions. "At the first step, the moving defendant must make a *prima facie* showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech." *Gunn*, 65 F.4th at 1118 (internal quotation marks and citation omitted). If the defendant satisfies this burden at the first step, then at the second step "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." *Id*. (internal quotation marks and citation omitted).

### 1. Step One

"The first prong of the anti-SLAPP analysis involves two related inquiries: (1) whether the Complaint alleges activity protected by section 425.16 and (2) whether the cause or causes of action alleged arise from those activities." *Gunn*, 65 F.4th at 1120-21 (internal quotation marks and citation omitted). "[T]he question is only whether a defendant has made out a *prima facie* case that activity underlying a plaintiff's claims is statutorily protected." *Id*. at 1121 (internal quotation marks and citation omitted).

Claims 5, 6, and 7 are based on allegations that Zoox misrepresented to Epic that it (Zoox) holds a copyright interest in the Content, and that Zoox thereby coerced Epic to suspend sales of the Content. *See* FAC ¶¶ 32, 39, 46. Claim 5 asserts that Zoox's actions interfered with Shande's contractual relationship with Epic, Claim 6 asserts that Zoox's actions interfered with Shande's prospective economic relationship with Epic and potential customers, and Claim 7 asserts that Zoox's actions constituted unlawful, unfair, or fraudulent business practices under the UCL. *See* FAC ¶¶ 33, 41, 46.

Claims 5, 6, and 7 do not specify the form of Zoox's alleged misrepresentations to Epic. Zoox assumes that the claims refer to its alleged misrepresentations in the takedown notice and subsequent communications with Epic and argues that those communications constitute protected activities based on decisions holding that sending a DMCA takedown notice is an activity

protected by § 425.16. *See, e.g., Moonbug,* 2022 WL 580788, *12; *Beyond Blond Prods., LLC v. Heldman*, No. CV 20-5581 DSF (GSJx), 2021 WL 4859972, at *5 (C.D. Cal. Feb. 8, 2021). In opposition, Shande clarifies that Claims 5, 6, and 7 are *not* based on the DMCA takedown notice, but rather on Zoox's communications with Epic after the DMCA takedown process concluded. *See* Pl.'s Opp. at 10-11. It appears that those post-takedown notice communications would qualify for protection under the anti-SLAPP statute. "Communications made to enforce intellectual property rights . . . are protected by the anti-SLAPP statute even if the alleged infringer initiated the lawsuit." *Cove USA LLC v. No Bad Days Enterprises, Inc.*, No. 8:20-cv-02314-JLS-KES, 2021 WL 3568251, at *4 (C.D. Cal. July 2, 2021). For purposes of this motion, Shande concedes that Zoox's communications with Epic qualify as protected speech activity under § 425.16(e). *See id*. Accordingly, the Court finds that Zoox has satisfied its step one burden to make out a *prima facie* case that the activities underlying Claims 5, 6, and 7 are statutorily protected.

In light of the foregoing, the Court need not consider the parties' extrinsic evidence – a declaration from Zoox's associate general counsel and a declaration from Shande – at step one of the anti-SLAPP analysis. *See* Spinella-Mamo Decl., ECF 32-1; Shande Decl., ECF 37-1. While a district court may consider extrinsic evidence in evaluating an anti-SLAPP motion, it cannot do so "without essentially converting the motion into one for summary judgment." *Gunn*, 65 F.4th at 1120. "[W]hen an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply," and "discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court." *Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). In contrast, "when an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Id*. Here, both parties have submitted extrinsic evidence, but as discussed above the Court need not and does not consider that evidence at step one. At step two, Zoox raises purely legal challenges to the sufficiency of Claims 5, 6, and 7. Accordingly, the Court applies the Rule 12(b)(6) pleading standard at step two of the anti-SLAPP analysis, not the Rule 56 summary judgment standard.

### 2. Step Two

At the second step, "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." *Baral*, 1 Cal. 5th at 396. If the challenged claims are not adequately stated in the initial pleading, the district court may defer consideration of the anti-SLAPP motion pending the filing of an amended pleading. *See Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091-92 (9th Cir. 2004) (holding that district court did not err in deferring consideration of Covad's anti-SLAPP motion pending receipt of Verizon's first amended complaint, and affirming denial of anti-SLAPP motion to strike first amended complaint).

Zoox contends that Shande cannot meet his burden at the second step of the anti-SLAPP analysis, because Claims 5, 6, and 7 are preempted by the DMCA, are barred by California's litigation privilege, and are not well-pled. Shande asserts that the claims are not preempted, are not barred by the litigation privilege, and are adequately pled.

#### a. DMCA Preemption

When it filed its initial motion brief, Zoox understood Claims 5, 6, and 7 to be grounded in the DMCA takedown notice that it sent to Epic. Zoox argues that state law claims based on a DMCA takedown notice are preempted by the federal DMCA statutory scheme. *See Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1206 (N.D. Cal. 2004). In opposition, Shande concedes his state law claims would be preempted if they were based on the DMCA takedown notice, but he asserts that his state law claims are *not* based on the takedown notice. *See* Pl.'s Opp. at 10. Shande points out that Claims 5, 6, and 7 do not incorporate earlier allegations regarding the DMCA takedown notice and he asserts that those claims are based solely on communications between Zoox and Epic after the DMCA takedown process was complete.

In reply, Zoox argues that Shande's artful pleading to exclude certain allegations from Claims 5, 6, and 7 are insufficient to save those claims from dismissal on preemption grounds, contending that those claims clearly are based on the DMCA takedown notice. Moreover, Zoox points out that Claims 5, 6, and 7 are pled to exclude not only allegations regarding the DMCA takedown notice, but also allegations regarding the subsequent communications upon which the

11

1 claims are based. Finally, Zoox argues that its follow-up communications with Epic were part and
2 parcel of the DMCA takedown process such that any claims based on those communications are
3 preempted.

4 It is entirely unclear from the FAC what communications form the basis of Claims 5, 6,
5 and 7. The claims do not describe the communications at issue or incorporate earlier allegations in
6 the FAC discussing the various communications between Zoox and Epic. Absent clarification
7 regarding the basis for Claims 5, 6, and 7, the Court cannot determine whether those claims are
8 preempted by the DMCA.

### b. California Litigation Privilege

Zoox contends that Claims 5, 6, and 7 are barred by California's litigation privilege. The litigation privilege, codified at California Civil Code § 47(b), provides absolute immunity from tort liability based on communications in or related to judicial proceedings. *See Kimes v. Stone*, 84 F.3d 1121, 1126 (9th Cir. 1996). The privilege applies to pre-litigation communications. *See Rubin v. Green*, 4 Cal. 4th 1187, 1194 (1993) ("[N]umerous decisions have applied the privilege to prelitigation communications[.]"). Zoox argues that it is clear from the FAC that the communications giving rise to Claims 5, 6, and 7 are pre-litigation communications falling within § 47(b). As discussed above, it is unclear from the FAC what communications form the basis of the subject claims. Accordingly, the Court cannot determine the applicability of § 47(b) absent clarification regarding the basis of Claims 5, 6, and 7.

### c. Inadequate Pleading

Finally, Zoox argues that Claims 5, 6, and 7 are not well-pled. The Court agrees. Given the way those claims are pled, and in particular the Shande's failure to incorporate prior allegations regarding the communications between Zoox and Epic, the Court cannot tell what form Zoox's alleged misrepresentations to Epic took. This ambiguity in the pleadings is fatal to the state law tort claims, as Shande has failed to plead facts demonstrating that Zoox interfered with his contractual relationships and prospective economic advantage or engaged in unfair business practices. Under these circumstances, the Court concludes that the most prudent course is to grant Zoox's alternative motion to dismiss Claims 5, 6, and 7 for failure to state a claim under Rule

12(b)(6) and to defer consideration of the anti-SLAPP motion pending the filing of an amended pleading. *See Verizon*, 377 F.3d at 1091-92. "If the offending claims remain in the [ ] amended complaint, the anti-SLAPP remedies remain available to defendant[]." *Id*.

Consideration of Zoox's anti-SLAPP motion is DEFERRED and Zoox's alternative motion to dismiss is GRANTED WITH LEAVE TO AMEND as to Claims 5, 6, and 7.

## IV. ORDER

(1) A ruling on Zoox's anti-SLAPP motion is DEFERRED pending amendment of the pleading to provide Shande with the opportunity to either eliminate his allegations of protected activity or allege claims based on protected activity with adequate specificity. The anti-SLAPP motion is TERMINATED WITHOUT PREJUDICE to renewal, if appropriate, after the filing of Shande's amended pleading (if any). Plaintiff Shande is reminded that if he is unable to meet the requirements of § 425.16, reasonable attorneys' fees for all tasks Defendant Zoox devotes to a successful motion to strike are mandatory.

(2) Zoox's motion to dismiss is GRANTED as to all claims in the FAC, WITH LEAVE TO AMEND as to Claims 1, 2, 5, 6, and 7, and WITHOUT LEAVE TO AMEND as to Claims 3 and 4.

(3) At the hearing on the motion, it was agreed that any amended complaint would be due two weeks after the settlement conference scheduled for August 25, 2023 with Magistrate Judge DeMarchi. Accordingly, any amended complaint shall be filed by September 8, 2023. Leave to amend is limited to the deficiencies identified in this order. Shande may not add new claims or parties without obtaining prior leave of the Court.

(4) This order terminates ECF 32.

Dated: August 14, 2023

_____
BETH LABSON FREEMAN
United States District Judge