KENNETH M. WEINFIELD (SBN 116560)
**CHAUVEL & GLATT, LLP**
66 BOVET ROAD, SUITE 280
SAN MATEO, CA  94402
TELEPHONE:  650-573-9500
FACSIMILE:  650-573-9689
EMAIL:  ken@chauvellaw.com

Attorneys for Plaintiff Tavershima Shande

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TAVERSHIMA SHANDE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ZOOX, INC, a Delaware corporation,<br><br>Defendant. | Case No. 22-cv-05821-BLF<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>1) **Declaratory Relief Under 17 U.S.C. § 101** *et. seq*.<br>2) **Violation of 17 U.S.C. § 512**<br>3) **Infringement of Exclusive Copyright Interest - DISMISSED**<br>4) **Violations of Contract and Public Policy - DISMISSED**<br>5) **Interference with Contractual Relations**<br>6) **Interference with Prospective Economic Advantage**<br>7) **Unlawful and Unfair Competition, Cal. Bus. & Prof. Code § 17200** *et. seq.*<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Tavershima Shande, by and through his counsel, alleges as follows:

**JURISDICTION**

1. This Court has jurisdiction over the subject matter of this action pursuant to 17 U.S.C. §§ 501 and 512, as well as 28 U.S.C. §1331 and 28 U.S.C. §1338(a), in that it involves questions arising

1
SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF AND DAMAGES

under federal copyright law. The Court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367, in that they arise out of the same common nucleus of material facts as plaintiff's federal claims. The federal and state law claims are so intertwined that it is appropriate for the Court to exercise jurisdiction over the state law claims set forth herein.

**PARTIES**

2. Plaintiff Tavershima Shande ("Shande"), is a resident of Burlingame, California.

3. Defendant Zoox, Inc. ("Zoox") is a Delaware corporation which has its principal place of business in Foster City, California.

**VENUE AND INTRADISTRICT ASSIGNMENT**

4. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)(1) and 1400(a) in that defendant resides in or conducts business within this district. Further, venue is proper in this district under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events which are the subject of this action occurred within this district.

5. Pursuant to Local Rule 3-2, a substantial part of the events which give rise to the instant claim occurred in San Mateo County.

**GENERAL ALLEGATIONS**

6. Between January 2017 and March 2022, Shande was employed by Zoox as a Staff Technical Artist. In that role, he created digital street scenes using Zoox-supplied software for use in training Zoox's autonomous vehicles to navigate an urban environment.

7. During that period, Shande separately created digital videogame content (the "Content") on his own time, using his own equipment and software, which drew upon imagery in the public domain. No Zoox intellectual property, imagery or other material belonging to the company was utilized in creating the Content, which is well outside the scope of Zoox's business, actual or potential. Shande

registered his copyright in the Content with the United States Copyright Office on October 5, 2022, Registration No. PA 2-381-051. As the owner of the copyright in the Content, Shande sold and distributed it to customers on the Unreal Engine marketplace, which is owned by Epic Games, Inc. ("Epic"), where other similar works are sold.

8. Before seeing the Content, Zoox demanded that Shande refrain from selling or distributing it to others, asserting that the company was entitled to prevent him from creating digital urban scenery in his spare time, regardless of how unrelated it was to his work at Zoox or which cities were depicted.

9. Shande explained to his superiors, up to and including the company CEO, that the Content contained no material whatsoever belonging to Zoox or relating to autonomous vehicles.  He further offered to go over the Content in detail with them to demonstrate that it did not represent a threat to, or impinge upon, the company's business.  Zoox declined this offer, and instead issued an ultimatum: either halt all sales of the Content or the company would treat his refusal to do so as a *de facto* resignation from Zoox.  Shande rejected this demand as both unlawful and unreasonable, at which point Zoox terminated his employment.

10.  Zoox submitted a take-down notice to Epic for the Content under 17 U.S.C. § 512 on or about April 11, 2022.  In that notice, Zoox falsely communicated to Epic that the Content infringed upon images embedded in its autonomous vehicle software which Shande had helped create as part of his employment with Zoox.  Pursuant to statute, Epic temporarily suspended sales of the game, at which point Shande submitted a counter-notice disputing Zoox's take-down notice.  At that point, Zoox had ten business days to file a copyright infringement suit challenging the counter-notice.  When it failed to do so, Epic restored the Content for sale on its site shortly thereafter.  Zoox was apparently dissatisfied with this statutorily-mandated outcome, and sought to attain its objectives by other means.

11. Beginning in May 2022, Zoox prevailed upon Epic to permanently remove the Content from its site under false pretenses and without giving Shande an opportunity to respond to its contentions. These false and misleading statements included representations that: (1) Shande used knowledge and skills he acquired at Zoox to create the Content; (2) that he began selling the Content on the Unreal Engine marketplace only after his employment with Zoox had concluded; (3) that the Content is owned by Zoox under the work-made-for-hire doctrine under federal copyright law; (4) that copyrightable material created by Shande during non-work hours belongs to Zoox as a matter of law because graphic artists such as Shande have no "after hours" in which to create works of their own; and (5) that Epic was potentially liable under applicable law as a contributory infringer for not removing the Content from its marketplace.

12. When Shande requested an explanation from Epic about what had occurred, the latter referred him to Zoox's counsel while expressing a willingness to restore the Content to its marketplace if the dispute between Zoox and Shande could be resolved. Epic also mentioned that, apparently at Zoox's instigation, payments for the Content already received by Epic from Shande's customers would be refunded to the latter, and that an equivalent sum would be withheld from the proceeds of other product sales made by Shande on the Unreal Engine marketplace until all amounts Shande had received for the Content had been offset. These steps were taken without Shande's permission or approval.

### FIRST CAUSE OF ACTION

**(Declaratory Relief)**

13. Shande repeats the allegations contained in paragraphs 1 through 12 above by incorporation and reference as if they were fully set forth herein.

14. An actual controversy has arisen and now exists between Shande and Zoox with respect to the parties' respective rights regarding ownership of the Content, including with regard to Zoox's contention that the Content belongs to it as a work-made-for-hire under 17 U.S.C. § 101.

15. The instant cause of action is distinct from those set forth below in that it seeks a determination as to which party owns the Content under 17 U.S.C. § 101 *et. seq.* regardless of Zoox's scienter or knowledge of the wrongfulness of its actions.

16. A judicial declaration is necessary and appropriate at this time, under the circumstances, in order to ascertain the parties' legal rights and duties concerning the Content.  Shande has been, and will be, irreparably harmed by any further delay or uncertainty over such rights and duties.

## SECOND CAUSE OF ACTION

### (Violation of 17 U.S.C. § 512)

17. Plaintiff repeats the allegations contained in paragraphs 1 through 10 of this Complaint by incorporation of and reference to said allegations, as if they were set forth in full herein.

18. In its take-down notice, Zoox knowingly and materially misrepresented to Epic that the Content infringed imagery contained in Zoox's autonomous vehicle software. In response, Epic temporarily suspended access to the Content on its site, depriving Shande of proceeds from such sales.  By statute, such a take-down notice may be submitted only based upon a good faith belief that the material in question is infringing.

19. That Zoox knew the representations contained in its take-down notice to Epic were false is evident from the verbiage of the take-down notice itself and statements made by Zoox officials to Shande prior to its issuance.  Specifically, Zoox's take-down notice asserted that the Content infringed upon its copyrighted "images . . . embedded into a program used by Zoox in its autonomous vehicles' operating software."  Zoox knew that Epic would more readily take down the Content in response to a simple allegation of copying, as opposed to a convoluted work-made-for-hire argument or a novel interpretation

of Cal. Labor Code § 2870.  So it omitted the latter two points from its take-down notice in favor of an easily-understood – but demonstrably false – reference to a purported infringement of images embedded in its autonomous vehicle software.  The falsity of the latter assertion is confirmed by Zoox's failure to defend its truthfulness, as written, in this court.

20.     Zoox's knowledge of the falsity of its take-down notice is further demonstrated by the contemporaneous comments of high-ranking company officials.  During an early 2022 Zoom meeting with Shande, for instance, a Zoox Director and Technical Program Manager told the company's Associate General Counsel for IP and Technology that the Content was "different from what [Shande] was doing at Zoox" and had been created using "old school videogame techniques."  In the course of another Zoom meeting in March 2022 with Shande and Zoox's CEO, the company's co-founder and Chief Technology Officer told Shande that "it's not like you broke some federal law," while intimating that the company's real concern was that a competitor might utilize the Content to create a demonstration video which would facilitate its ability to obtain venture funding.

21.     Despite this acknowledgment, Zoox's co-founder and CTO warned Shande shortly before the termination of his employment in March 2022 that the company would take unspecified legal or extra-legal measures against him should he not comply with Zoox's demand that he voluntarily stop selling the Content.  His particular words were "We have our ways."  These and other comments by high-level Zoox officials, in the presence of the company CEO and in-house legal counsel – taken together with the actual verbiage of Zoox's take-down notice and the company's subsequent failure to defend it in court –  show that Zoox knew at the time of its misrespresentations to Epic that the Content did not utilize images contained in Zoox's autonomous vehicle software or otherwise violate copyright law.

22.     Shande has incurred damages, costs and attorneys' fees as a result of Zoox's knowingly false representations to Epic.

**THIRD CAUSE OF ACTION – DISMISED WITH PREJUDICE**

**(Infringement of Exclusive Copyright Interest, 17 U.S.C. § 501)**

**FOURTH CAUSE OF ACTION – DISMISSED WITH PREJUDICE**

**(Violations of Contract and Public Policy; Cal. Labor Code § 2870)**

**FIFTH CAUSE OF ACTION**

**(Intentional Interference with Contractual Relations)**

23. Plaintiff repeats the allegations contained in paragraphs 1 through 9 and 11 through 12 of this Complaint by incorporation of and reference to said allegations, as if they were set forth in full herein.

24. At all times pertinent hereto, Zoox knew that Shande had entered into a valid and binding contract with Epic for the sale and distribution of the Content and other material which had the likelihood of economic benefit for Shande.

25. On May 9, 2022, Zoox's outside legal counsel sent a letter to Epic which falsely represented the following: (1) that Shande used knowledge and skills he acquired at Zoox to create the Content; (2) that he began selling the Content on the Unreal Engine marketplace only after his employment with Zoox had concluded; (3) that the Content is owned by Zoox under the work-made-for-hire doctrine under federal copyright law or by contract; (4) that copyrightable material created by Shande during non-work hours belongs to Zoox as a matter of law because graphic artists such as Shande have no "after hours" in which to create works of their own; and (5) that Epic was potentially liable under applicable law as a contributory infringer for not removing the Content from its marketplace.

26. On information and belief, Zoox made other false and misleading representations to Epic and took other actions after May 9, 2022 in an effort to pressure Epic into halting sales of the Content. By coercing Epic in this manner, Zoox intentionally and in bad faith interfered with Shande's ability to reap the contractual benefits from such sales. On information and belief, Zoox insisted that Epic withhold sums from Shande in order to reimburse customers who had previously purchased the Content, further interfering with Shande's contractual relationship with Epic.

27. Under California law, the qualified privilege applicable to pre-litigation statements and conduct such as alleged here is available only where such behavior was undertaken in good faith. *Laffer v. Levinson, Miller, Jacobs & Phillips*, 34 Cal.App.4th 117, 123-24 (1995); *Premier Communications Network, Inc. v. Fuentes*, 880 F.2d 1096, 1102-03 (9th Cir. 1989).

28. As a consequence of Zoox's aforementioned actions, Shande's contractual relationship with Epic has been disrupted.

29. As a further proximate result of Zoox's acts of interference, Shande has suffered, and will continue to suffer, irreparable harm in the absence of judicial intervention. Equitable relief regarding these issues is necessary to adequately redress such behavior.

30. Additionally, Shande has incurred and will continue to incur general and special damages as a proximate result of such acts of interference, in an amount to be proven at trial.

31. Zoox's conduct as alleged herein was egregious and carried out with willful and conscious disregard of Shande's rights and, hence, was oppressive and malicious. As a result, Shande is entitled to recover exemplary and punitive damages.

//

//

//

## SIXTH CAUSE OF ACTION

**(Intentional Interference With Prospective Economic Advantage)**

32.    Plaintiff repeats the allegations contained in paragraphs 1 through 9 and 11 through 12 of this Complaint by incorporation of and reference to said allegations, as if they were set forth in full herein.

33.    At all times pertinent hereto, Zoox knew that Shande's relationship with Epic had the likelihood of economic benefit for Shande.

34.    Zoox's May 9, 2022 letter to Epic falsely represented the following: (1) that Shande used knowledge and skills he acquired at Zoox to create the Content; (2) that he began selling the Content on the Unreal Engine marketplace only after his employment with Zoox had concluded; (3) that the Content is owned by Zoox under the work-made-for-hire doctrine under federal copyright law or by contract; (4) that copyrightable material created by Shande during non-work hours belongs to Zoox as a matter of law because graphic artists such as Shande have no "after hours" in which to create works of their own; and (5) that Epic was potentially liable under applicable law as a contributory infringer for not removing the Content from its marketplace.

35.    On information and belief, Zoox made other false and misleading representations to Epic and took other actions after May 9, 2022 in an effort to pressure Epic into halting sales of the Content. By coercing Epic in this manner, Zoox intentionally and in bad faith interfered with Shande's ability to reap the benefits of his prospective economic relationship with Epic as well as with prospective customers.    On information and belief, Zoox insisted that Epic withhold sums from Shande in order to reimburse customers who had previously purchased the Content, further interfering with Shande's prospective economic advantage with Epic as well as with potential customers.

36.    The aforementioned acts were independently wrongful in that they violated, *inter alia*, Cal. Labor Code § 2870 and 17 U.S.C. § 101 *et. seq*.  They also were defamatory, in violation of Cal.

Civ. Code § 44 et. seq., and constituted unlawful, unfair or fraudulent business practices within the meaning of Cal. Bus. & Prof. Code § 17200 *et. seq.*

37. Under California law, the qualified privilege applicable to pre-litigation statements and conduct such as alleged here is available only where such behavior was undertaken in good faith. *Laffer v. Levinson, Miller, Jacobs & Phillips*, 34 Cal.App.4th 117, 123-24 (1995); *Premier Communications Network, Inc. v. Fuentes*, 880 F.2d 1096, 1102-03 (9th Cir. 1989).

38. As a consequence of Zoox's aforementioned actions, Shande's prospective economic advantage with Epic and potential customers has been disrupted.

39. As a further proximate result of Zoox's acts of interference, Shande has suffered, and will continue to suffer, irreparable harm in the absence of judicial intervention. Equitable relief regarding these issues is necessary to adequately redress such behavior.

40. Additionally, Shande has incurred and will continue to incur general and special damages as a further proximate result of such acts of interference, in an amount to be proven at trial.

41. Zoox's conduct as alleged herein was egregious and carried out with willful and conscious disregard of Shande's rights and, hence, was oppressive and malicious. As a result, Shande is entitled to recover exemplary and punitive damages.

**SEVENTH CAUSE OF ACTION**

**(Violation of the Unfair Business Practices Act, Cal. Bus. & Prof. Code § 17200, *et seq.*)**

42. Plaintiff repeats the allegations contained in paragraphs 1 through 9, 11 through 12 and 24 through 41 of this Complaint by incorporation of and reference to said allegations, as if they were set forth in full herein.

43. Zoox's acts constitute unlawful, unfair or fraudulent business practices within the meaning of California Business and Professions Code § 17200 *et. seq.* Among other things, Zoox's false and

misleading representations were intended to, and did, induce Epic to rely upon the inaccuracies contained therein when deciding whether to accede to Zoox's demand that Epic remove the Content from the Unreal Engine marketplace.

44. Shande has been irreparably damaged by such unfair business practices, and will continue to suffer irreparable injury in the absence of judicial intervention. Equitable relief regarding these issues is necessary to adequately redress such behavior.

45. Shande is, further, entitled to restitution of any and all gains, profits and advantages obtained by Zoox as a result of the aforementioned misconduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Shande prays for judgment against Zoox as follows:

1. For declaratory relief;

2. For temporary, preliminary and permanent injunctive relief;

3. For general and special damages, as well as restitution, according to proof at trial;

4. For pre- and post-judgment interest thereon;

5. For statutory and punitive damages;

6. For attorneys' fees and costs of suit pursuant to statute; and

7. For such other and further relief as the court deems just and proper.

Dated: September 7, 2023                    CHAUVEL & GLATT, LLP

By: _____/s/_____
Kenneth M. Weinfield
Attorneys for Plaintiff Tavershima Shande

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of any issue herein triable of right by a jury.

Dated: September 7, 2023                CHAUVEL & GLATT, LLP

By: ___/s/_____
         Kenneth M. Weinfield
    Attorneys for Plaintiff Tavershima Shande