William B. Dyer III (*admitted Pro Hac Vice*)
Hala Mourad (*admitted Pro Hac Vice*)
LEE & HAYES, P.C.
75 14th Street NE, Ste. 2500
Atlanta, GA 30309
Telephone: (404) 815-1900
Facsimile: (404) 817-1700
bill.dyer@leehayes.com
hala.mourad@leehayes.com

George H. Brunt, CA Bar No. 223457
LEE & HAYES, P.C.
601 West Riverside Ave., Suite 1400
Spokane, WA 99201
Telephone: (509) 324-9256
Facsimile: (509) 323-8979
georgeb@leehayes.com

Jeffrey M. Fisher (SBN 155284)
Tim Horgan-Kobelski (SBN 319771)
FARELLA BRAUN + MARTEL LLP
One Bush Street, Ste. 900
San Francisco, California 94104-4415
Telephone: (415) 954-4400
Facsimile: (415) 954-4480
jfisher@fbm.com
tkobelski@fbm.com

Attorneys for Defendant Zoox, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| TAVERSHIMA SHANDE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ZOOX, INC., a Delaware corporation,<br><br>Defendant. | No. 5:22-cv-05821-BLF<br><br>**DEFENDANT ZOOX, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MOTION TO STRIKE STATE LAW CLAIMS**<br><br>**Date: March 14, 2024**<br>**Time: 9:00 AM**<br>**Courtroom 3, 5th Floor**<br>**Before: Hon. Beth Labson Freeman** |

# TABLE OF CONTENTS

I.      THE COURT SHOULD DISMISS THE § 512(F) CLAIM BECAUSE PLAINTIFF
        CONTINUES TO PLEAD A GOOD FAITH DISAGREEMENT OF
        INFRINGEMENT.................................................................................................1

II.     THE COURT SHOULD STRIKE THE STATE LAW CLAIMS UNDER THE ANTI-
        SLAPP STATUTE OR DISMISS THEM UNDER RULE 12(B)(6) ..................................4

        A.     Anti-SLAPP Step One: The State Law Claims Arise From Protected Activity .............4

        B.     Anti-SLAPP Step Two: Plaintiff Cannot Prevail on the State Law Claims ...................6

               1.     The Copyright Act Preempts the State Law Claims .................................6

               2.     The Litigation Privilege Bars the State Law Claims .................................9

               3.     The Noerr-Pennington Doctrine Bars the State Law Claims.....................12

               4.     The State Law Claims Fail Because They Arise From Zoox's Efforts to
                      Enforce its Intellectual Property Rights ...............................................13

III.    CONCLUSION.................................................................................................15

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Action Apartment Ass'n, Inc. v. City of Santa Monica,*
    63 Cal. Rptr. 3d 398 (Cal. 2007)................................................................9, 10, 11

5

*Adobe Sys. Inc. v. Coffee Cup Partners, Inc.,*
    No. C 11-2243 CW, 2012 U.S. Dist. LEXIS 127602 (N.D. Cal. Sept. 6, 2012)....................11

6

*Alper Auto., Inc. v. Day to Day Imps., Inc.,*
    No. 18-81753-CIV, 2021 U.S. Dist. LEXIS 212715 (S.D. Fla. Nov. 2, 2021) ........................8

7

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)....................................................................................13

8

9

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)....................................................................................13

10

*Beyond Blond Prods., LLC v. Heldman,*
    No. CV 20-5581 DSF (GSJx), 2021 U.S. Dist. LEXIS 203255 (C.D. Cal. Feb. 8,
    2021) ...........................................................................................................5

11

12

*Cinq Music Grp., LLC v. Create Music Grp., Inc.,*
    No. 2:22-cv-07505-JLS-MAR, 2023 U.S. Dist. LEXIS 17204 (C.D. Cal. Jan. 31,
    2023) .......................................................................................................7, 8

13

14

*Cobra Cap. LLC v. RF Nitro Commc'ns, Inc.,*
    266 F. Supp. 2d 432 (M.D.N.C. 2002) ................................................................14

15

16

*Complex Media, Inc. v. X17, Inc.,*
    No. CV 18-07588 SJO (AGRx), 2019 U.S. Dist. LEXIS 128129 (C.D. Cal. Mar. 4,
    2019) ...........................................................................................................5

17

18

*Cove USA LLC v. No Bad Days Enters., Inc.,*
    No. 8:20-cv-02314-JLS-KES, 2021 U.S. Dist. LEXIS 154443 (C.D. Cal. July 2,
    2021) .......................................................................................................4, 5

19

20

*Dollar Tree Stores Inc. v. Oyama Partners, LLC,*
    No. C 10-00325, 2010 U.S. Dist. LEXIS 49537 (N.D. Cal. Apr. 26, 2010) ...................14, 15

21

*Drink Tank Ventures LLC v. Real Soda in Real Bottles, Ltd.,*
    286 Cal. Rptr. 3d 333 (Cal. Ct. App. 2021) ..........................................................14

22

23

*ENTTech Media Grp. LLC v. Okularity, Inc.,*
    No. 2:20-cv-06298-JWH-Ex, 2021 U.S. Dist. LEXIS 45118 (C.D. Cal. Mar. 10,
    2021) ...........................................................................................................12

24

ZOOX, INC.'S REPLY IN SUPPORT
OF ITS MOTIONS TO DISMISS         ii         No. 5:22-cv-05821-BLF
AND STRIKE

*Fitbit, Inc. v. Laguna 2, LLC*,
   No. 17-cv-00079-EMC, 2018 U.S. Dist. LEXIS 2402 (N.D. Cal. Jan. 5, 2018)...............12, 13

*Geiser v. Kuhns*,
   13 Cal. 5th 1238 (Cal. 2022) ...............................................................................................5

*Jain v. Unilodgers, Inc.*,
   No. 21-cv-09747-TSH, 2022 U.S. Dist. LEXIS 102532 (N.D. Cal. June 8, 2022)................14

*Lewis v. Activision Blizzard, Inc.*,
   634 F. App'x 182 (9th Cir. 2015) ..........................................................................................3

*Lown Cos. v. Piggy Paint, LLC*,
   No. 1:11-cv-911, 2012 U.S. Dist. LEXIS 111527 (W.D. Mich. Aug. 9, 2012) ...............13, 14

*Martin v. Tumblr, Inc.*,
   No. 15-cv-8338, 2017 U.S. Dist. LEXIS 236462 (S.D.N.Y. Feb. 10, 2017)...........................9

*Moonbug Ent. Ltd v. Babybus (Fujian) Network Tech. Co.*,
   No. 21-cv-06536-EMC, 2022 U.S. Dist. LEXIS 33613 (N.D. Cal. Feb. 25, 2022) ..........5, 8, 9

*Neville v. Chudacoff*,
   160 Cal. App. 4th 1255 (2008) ..............................................................................................5

*Niantic, Inc. v. Glob. ++*,
   No. 19-cv-03425-JST, 2020 U.S. Dist. LEXIS 61327 (N.D. Cal. Jan. 30, 2020) .......10, 11, 12

*Power Analytics Corp. v. Operation Tech., Inc.*,
   No. SA CV16-01955, 2017 U.S. Dist. LEXIS 226665 (C.D. Cal. Dec. 7, 2017) ..................14

*Premier Commc'ns Network, Inc. v. Fuentes*,
   880 F.2d 1096 (9th Cir. 1989) ..............................................................................................11

*Project DOD, Inc. v. Federici*,
   No. 09-213-P-H, 2009 U.S. Dist. LEXIS 117401 (D. Me. Dec. 13, 2009) .............................6

*Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*,
   No. CV08-635 CAS AJWx), 2011 U.S. Dist. LEXIS 46023 (C.D. Cal. Apr. 27,
   2011) ......................................................................................................................................6

*Siniouguine v. Mediachase Ltd.*,
   No. CV 11-6113-JFW, 2012 U.S. Dist. LEXIS 87190 (C.D. Cal. June 11, 2012)...................2

*Swanson v. EMC Mortg. Corp.*,
   No. CV F 09-1507 LJO DLB, 2009 U.S. Dist. LEXIS 107912 (E.D. Cal. Oct. 29,
   2009) ....................................................................................................................................15

*The Sunny Factory, LLC v. Haoyi Chen*,
   No. 21 C 3648, 2022 U.S. Dist. LEXIS 43969 (N.D. Ill. Mar. 11, 2022) ...............................8

*Tine Bak LLC v. Selkatz, Inc.*,
No. CV 20-5065 DSF (SK), 2020 U.S. Dist. LEXIS 252901 (C.D. Cal. Nov. 30,
2020) ...................................................................................................................7, 8, 9

*TP Link U.S. Corp. v. Careful Shopper LLC*,
No. 8:19-cv-00082, 2020 U.S. Dist. LEXIS 104065 (C.D. Cal. Mar. 23, 2020).......................5

*Tuck Beckstoffer Wines LLC v. Ultimate Distribs., Inc.*,
682 F. Supp. 2d 1003 (N.D. Cal. 2010) ...............................................................15

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*,
117 F. Supp. 3d 1092 (C.D. Cal. 2015) ...........................................................12, 13

*Whyte Monkee Prods., LLC v. Netflix, Inc.*,
601 F. Supp. 3d 1117 (W.D. Okla. 2022) ...............................................................3

**Federal Statutes**

17 U.S.C. § 101 ...................................................................................2, 6, 7, 14

17 U.S.C. § 512 ...................................................................................6, 7, 8, 9

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ...............................................................14, 15

Cal. Civ. Code § 44 ...............................................................................14, 15

Cal. Civ. Code § 3426.1 ...............................................................................7

Cal. Labor Code § 2870 ...............................................................................7, 14, 15

**Federal Rules**

Fed. R. Civ. P. 12(b)(6)...............................................................................1, 4

Plaintiff's Opposition to Zoox's Motion to Dismiss and Strike ("Opp'n," ECF 77 and "Motion," ECF 71, respectively) makes clear the law compels dismissal of Plaintiff's § 512(f) claim under Rule 12(b)(6) and striking the State Law Claims under the anti-SLAPP statute. Plaintiff's own pleaded facts render his conclusory allegations implausible and even impossible. Plaintiff's Opposition attempts to distract the Court with irrelevant arguments and mischaracterized law. Plaintiff ignores the SAC's clear and fatal defects—even conceding outright that Plaintiff "will not address" Zoox's points. Opp'n at 1. Because Plaintiff has now had three opportunities to plead facts stating a plausible claim to relief and has failed, the Court should dismiss the SAC with prejudice.

## I. THE COURT SHOULD DISMISS THE § 512(F) CLAIM BECAUSE PLAINTIFF CONTINUES TO PLEAD A GOOD FAITH DISAGREEMENT OF INFRINGEMENT

Plaintiff's Opposition confirms the SAC demonstrates nothing more than a dispute between Zoox and Plaintiff as to whether the Content infringed Zoox's rights. Plaintiff's Opposition attempts to brush past the SAC's deficiencies by insisting that all reasonable inferences are taken in Plaintiff's favor. That is true, but Plaintiff must still plead sufficient factual matter from which it may be inferred that Zoox believed the Content was not infringing and said otherwise to Epic anyway—and the SAC does not. Not a single of Plaintiff's new allegations support an inference of bad faith. Indeed, the opposite is true—they negate any such inference and support Zoox's good faith belief of infringement.

Plaintiff argues bad faith is evidenced by the SAC's allegation that Zoox omitted the-work-made-for-hire doctrine from the First Takedown Notice. First, this has no bearing on whether Zoox subjectively believed the Content infringed. But regardless, Plaintiff ignores that this allegation is demonstrably false based on Plaintiff's own pleaded facts, because the First Takedown Notice recited the work-made-for-hire doctrine:

> Zoox never gave permission to its ***employees*** to post or use any of ***the copyrighted works created during the course of employment***. In fact, Zoox explicitly informed the owner of this account ([Plaintiff]) that he could not use the images in such a manner.

ECF 71-4 ("First Takedown Notice"). Plaintiff's only response to the plain text of the First Takedown Notice, buried in a footnote, is that "the words 'work-made-for-hire' do not appear anywhere in that notice." Opp'n at 6 n.1. This argument has no merit. The First Takedown Notice recites verbatim the legal definition of work-made-for-hire: Works ***created in the course and scope of [an employee's] employment*** . . . qualify as 'works for hire' under 17 U.S.C. § 101(1)." *Siniouguine v. Mediachase Ltd.*, No. CV 11-6113-JFW (AGRx), 2012 U.S. Dist. LEXIS 87190, at *20 (C.D. Cal. June 11, 2012) (emphasis added). Because Plaintiff's new allegation is demonstrably false, it cannot support an inference of bad faith.

Further, Plaintiff's allegation that Epic would not take down the Content if Zoox relied on the work-made-for-hire doctrine is refuted by Plaintiff's own pleaded facts. Contrary to Plaintiff's assertions, no "speculation" is required because Plaintiff pleads that Epic disabled the Content in response to both the First and Second Takedown Notices—both of which relied on the work-made-for-hire doctrine. *See* SAC ¶¶ 10-12, 18, 25, 26, 34, 35; First Takedown Notice; ECF 32-3 ("Second Takedown Notice"). Again, this allegation fails in any way to suggest Zoox did not subjectively believe the Content infringed, but it is demonstrably untrue anyway.

Plaintiff also argues Zoox's subjective bad faith is demonstrated by comments made by Zoox's co-founder and CTO "to the effect that [Plaintiff] did nothing illegal in selling the Content, but that [Zoox] would nonetheless do whatever it could to stop him – threateningly stating at one point that 'we have our ways.'" Opp'n at 6 (citing SAC ¶¶ 20, 21). First, this is not what is plead, and goes beyond any reasonable inference of what is plead. What the SAC alleges is that Plaintiff was told "it's not like you broke some federal law"—an idiom that at most goes to the magnitude of illegality, and not that "[Plaintiff] did nothing illegal." The facts Plaintiff actually pleads—which Plaintiff ignores—negates any bad faith inference and affirms Zoox's good faith belief of infringement. Plaintiff pleads that in the same conversation, the same co-founder and CTO indicated Zoox's concern "was that a

competitor might utilize the Content." SAC ¶ 20. Plaintiff has already admitted he was hired to create digital urban scenery for Zoox, and that he was separately selling the same thing on the side. SAC ¶¶ 6, 8. That Zoox believed a competitor might use the Content demonstrates Zoox believed it owned the Content "as works ***created during the course of employment***"—exactly as stated in the First Takedown Notice—because the Content was "of the kind [Plaintiff] [was] employed to perform" at Zoox. First Takedown Notice (emphasis added); *Lewis v. Activision Blizzard, Inc.*, 634 F. App'x 182, 184 (9th Cir. 2015) ("A work is made by an employee within the scope of her employment when . . . 'it is of the kind [the employee] is employed to perform[.]'").

Plaintiff's contention that Zoox "threateningly stat[ed] at one point that 'we have our ways'" again obfuscates the actual pleaded facts and fails to support any inference of bad faith. Opp'n at 6. The actual facts Plaintiff pleads is that Zoox warned Plaintiff that it would take measures, including legal measures, to enforce its rights if Plaintiff did not stop his unauthorized sale and distribution of the Content. SAC ¶ 21. This is hardly evidence of bad faith and in fact supports that Zoox believed it owned the Content and was willing to take legal measures to protect it.

Plaintiff's allegation that the Content was created using different means such as "old school videogame techniques" also does not plausibly raise an inference of bad faith. The SAC pleads the Content is digital urban scenery—the same thing Plaintiff was hired to create for Zoox, regardless of the techniques used—and that Zoox's ownership claim is based on the work-made-for-hire doctrine. SAC ¶¶ 6, 8, 14. Plaintiff's allegation does not plausibly suggest anything except that Zoox believed it owned the Content as works created during Plaintiff's course of employment because digital urban scenery was "of the kind [Plaintiff] [was] employed to perform" at Zoox. *Lewis*, 634 F. App'x at 184; *see, e.g.*, *Whyte Monkee Prods., LLC v. Netflix, Inc.*, 601 F. Supp. 3d 1117, 1133 (W.D. Okla. 2022) (park videography work fell within scope of employment of employee responsible for park photography).

Plaintiff also faults Zoox for responding to the SAC's allegation that Zoox has not defended its infringement notice on the merits in this Court, asserting that "Zoox also seems to think its purported belief in the veracity of the takedown notice may be adjudicated on a motion to dismiss." Opp'n at 5, 8. Plaintiff's argument misses the point. Zoox only addressed the SAC's allegation because Plaintiff relies on this alleged inaction to demonstrate the requisite bad faith of a § 512(f) claim. *See* SAC ¶ 19 (alleging that "[t]he falsity of [Zoox's] assertion [to Epic] is confirmed by Zoox's failure to defend its truthfulness, as written, in this court"). Because Zoox cannot address this on the merits in moving to dismiss is *exactly why* Plaintiff cannot use this alleged inaction to demonstrate the bad faith necessary to sustain a § 512(f) claim. Plaintiff's claim should be dismissed.

## II.   THE COURT SHOULD STRIKE THE STATE LAW CLAIMS UNDER THE ANTI-SLAPP STATUTE OR DISMISS THEM UNDER RULE 12(b)(6)

### A.   Anti-SLAPP Step One: The State Law Claims Arise From Protected Activity

The Court previously determined the Second Takedown Notice "would qualify for protection under the anti-SLAPP statute." ECF 67 at 10 ("Order"). Plaintiff ignores this and conclusorily asserts it does not. Because the Court already addressed this issue, the proper vehicle for Plaintiff's argument is a motion for reconsideration, not Plaintiff's Opposition. Regardless, Plaintiff's argument fails on the merits.

First, Plaintiff ignores § 425.16(e)(2), which is the basis for the Court's determination (and Zoox's argument) that the anti-SLAPP statute applies. Courts routinely hold that litigation-related communications such as cease-and-desist letters fall within the protection of California's anti-SLAPP statute. *See Cove USA LLC v. No Bad Days Enters., Inc.*, No. 8:20-cv-02314-JLS-KES, 2021 U.S. Dist. LEXIS 154443, at *9, *10 (C.D. Cal. July 2, 2021) (collecting cases and noting that "[c]ommunications made to enforce intellectual property rights . . . are protected by the anti-SLAPP statute[.]."); *Beyond Blond Prods., LLC v. Heldman*, No. CV 20-5581 DSF (GSJx), 2021 U.S. Dist.

LEXIS 203255, at *18 (C.D. Cal. Feb. 8, 2021) (infringement notices to Amazon and related communications constituted protected prelitigation activity); *TP Link U.S. Corp. v. Careful Shopper LLC*, No. 8:19-cv-00082, 2020 U.S. Dist. LEXIS 104065, at *18 (C.D. Cal. Mar. 23, 2020) (prelitigation communications to Amazon concerning allegedly counterfeit products constituted protected by anti-SLAPP statute); *Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1270 (2008) (anti-SLAPP statute applies to prelitigation communications such as demand letters and other statements).

Second, Plaintiff's argument that § 425.16(e)(4) does not apply is unavailing. Plaintiff attempts to characterize the Second Takedown Notice as directed to a "private party" for addressing a "private dispute." Opp'n at 9. But courts have construed the term "public interest" broadly, including "even private communications, so long as they concern a public issue." *Complex Media, Inc. v. X17, Inc.*, No. CV 18-07588 SJO (AGRx), 2019 U.S. Dist. LEXIS 128129, at *8 (C.D. Cal. Mar. 4, 2019). Public issues involve those "that could directly affect a large number of people beyond the direct participants." *Geiser v. Kuhns*, 13 Cal. 5th 1238, 1248 (Cal. 2022). Courts in the Ninth Circuit have found that communications that impact large online communities fall within the scope of § 425.16(e)(4). *Moonbug Ent. Ltd v. Babybus (Fujian) Network Tech. Co.*, No. 21-cv-06536-EMC, 2022 U.S. Dist. LEXIS 33613, at *35 (N.D. Cal. Feb. 25, 2022) (anti-SLAPP applies to communications relating to videos on YouTube); *Complex Media*, 2019 U.S. Dist. LEXIS 128129, at *11 (same). The Second Takedown Notice resulted in the removal of the Content and refunds to customers on the Unreal Engine Marketplace, a digital storefront that is visited millions of times per month and caters to a large online community. SAC ¶ 12. The Second Takedown Notice therefore falls within the protection of the anti-SLAPP statute as concerning a public issue. Thus, through either § 425.16(e)(2) or (e)(4), Zoox satisfies Step One of the anti-SLAPP analysis.

**B. Anti-SLAPP Step Two: Plaintiff Cannot Prevail on the State Law Claims**

**1. The Copyright Act Preempts the State Law Claims**

Plaintiff does not dispute that state law claims based on DMCA takedown notices are preempted. Plaintiff's only argument that preemption does not apply is that the Second Takedown Notice is not a statutory takedown notice because it is instead "a generic cease and desist letter" and that "the statutorily-prescribed takedown process had concluded." Opp'n at 9, 11. Both arguments are wrong and simply attempt to make an improper end-run around DMCA preemption.

Plaintiff argues the Second Takedown Notice is outside the purview of the DMCA because it is instead a "cease and desist letter." Plaintiff is wrong because the two are not distinct, mutually exclusive creatures. Rather, a DMCA takedown notice is a cease-and-desist letter to a service provider—which is exactly what the Second Takedown Notice is. *See* § 512(c)(3); *Project DOD, Inc. v. Federici*, No. 09-213-P-H, 2009 U.S. Dist. LEXIS 117401, at *19 (D. Me. Dec. 13, 2009) ("DMCA notices . . . are in essence cease-and-desist letters."). Plaintiff accuses Zoox of "attempting to conflate a generic cease and desist letter with a statutory takedown notice" but the reverse is true—Plaintiff is attempting to create a distinction where none exists. Plaintiff's reliance on *Rock River Communications, Inc. v. Universal Music Group, Inc.* for support is misplaced. No. CV08-635 CAS AJWx), 2011 U.S. Dist. LEXIS 46023 (C.D. Cal. Apr. 27, 2011). Contrary to Plaintiff's assertions, *Rock River* does not mean an "ordinary cease and desist letter falls outside the scope of DMCA preemption." Rather, what mattered in *Rock River* was not that it involved a "cease and desist letter," but that the service provider lacked the statutorily required user-directed storage—a point that is not disputed here. *Id.* at *42.

Plaintiff's attempt to characterize the Second Takedown Notice as distinct from a statutory takedown notice because it asserted ownership rights under "general legal principles (17 U.S.C. § 101, Cal. Labor Code § 2870, and Cal. Civ. Code § 3426.1 *et. seq.*)" is similarly unavailing. *See* Opp'n at

11. There is nothing to preclude a statutory takedown notice from doing so, so long as it substantially meets the statutory requirements. *See* § 512(c)(3)(A). And this argument contradicts Plaintiff's earlier argument that this information was *required* in the First Takedown Notice (which the parties do not dispute is a statutory takedown notice). Specifically, the SAC alleges the First Takedown Notice is subject to § 512(f) liability precisely *because* it allegedly did *not* expressly reference the work-made-for-hire doctrine of 17 U.S.C. § 101 and Cal. Labor Code § 2870. *See* SAC ¶ 19; Opp'n at 6. This contention therefore has no merit.

Plaintiff's argument misses the point—DMCA preemption does not hinge on labels but instead is invoked by the submission of allegedly "false infringement notices [that] fall within the notice scheme of the DMCA." *Tine Bak LLC v. Selkatz, Inc.*, No. CV 20-5065 DSF (SK), 2020 U.S. Dist. LEXIS 252901, at *13 (C.D. Cal. Nov. 30, 2020). To invoke the DMCA, a notice of claimed infringement only needs to substantially provide the requisite information in the form of a written communication provided to the designated agent of a service provider. *See* § 512(c)(3)(A). On this point, and as explained in Zoox's Motion, the pleaded facts demonstrate that the Second Takedown Notice falls squarely under the DMCA. The Second Takedown Notice was sent pursuant to the DMCA, expressly titled as a "DMCA Takedown Notice for [Content] on Unreal Engine Marketplace," addressed to Epic's designated copyright agent for DMCA takedown requests, and provides the information required of an infringement notice by § 512(c)(3)(A) of the DMCA. Plaintiff does not dispute any of these facts in its Opposition. The Second Takedown Notice is thus part of the same takedown notice scheme that Plaintiff admits preempts state law, and Plaintiff's claim should be dismissed. *See, e.g.*, *Cinq Music Grp., LLC v. Create Music Grp., Inc.*, No. 2:22-cv-07505-JLS-MAR, 2023 U.S. Dist. LEXIS 17204, at *7 (C.D. Cal. Jan. 31, 2023) (DMCA preemption applied to continuously issued copyright infringement notices to YouTube); *Tine Bak*, 2020 U.S. Dist. LEXIS 252901, at *15 (DMCA preemption applied because "[t]he substance of Defendant's complaint, as

1    described in the Complaint, addresses the removal of an app because of an allegation of copyright

2    infringement that a party says is false").

3         Plaintiff further argues the Second Takedown Notice is not a statutory takedown notice

4    "because the statutorily-prescribed takedown process had concluded" when Zoox did not file suit.

5    Opp'n at 9, 10; *see* SAC ¶ 10. This argument, for which Plaintiff cites no legal authority, also fails.

6    Zoox was not required to sue because § 512(g)(2) does not "impose[] this requirement on Defendants."

7    *The Sunny Factory, LLC v. Haoyi Chen*, No. 21 C 3648, 2022 U.S. Dist. LEXIS 43969, at *13 (N.D.

8    Ill. Mar. 11, 2022). Filing or not filing suit does not conclude any statutorily defined process, as

9    Plaintiff alleges—filing suit merely provides a safe harbor to a service provider against liability. *Id.*

10   And Plaintiff does not cite any legal authority barring a copyright holder from submitting multiple

11   infringement notices under the DMCA or providing additional information on a claim of copyright

12   infringement in a takedown notice. To the contrary, courts have recognized such notices as falling

13   within the purview of the DMCA and triggering preemption. *See Cinq Music*, 2023 U.S. Dist. LEXIS

14   17204, at *7 (serial takedown notices directed at the same content fell within purview of DMCA); *The*

15   *Sunny Factory*, 2022 U.S. Dist. LEXIS 43969, at *13 (repeated DMCA claims for copyright

16   infringement permissible because § 512(g)(2) does not impose requirement to sue); *Alper Auto., Inc.*

17   *v. Day to Day Imps., Inc.*, No. 18-81753-CIV, 2021 U.S. Dist. LEXIS 212715, at *13, *20, *23 (S.D.

18   Fla. Nov. 2, 2021) (serial takedown notices within scope of DMCA); *Moonbug*, 2022 U.S. Dist. LEXIS

19   33613, at *4, *43 (DMCA preempted state law claims where copyright holder sent a 17-page letter

20   elaborating on alleged infringement in connection with takedown notices); *Tine Bak*, 2020 U.S. Dist.

21   LEXIS 252901, at *12-14 (DMCA preempted state law claim where copyright holder exchanged

22   multiple communications with Apple in connection with DMCA infringement notice).

23        Plaintiff also appears to argue the Second Takedown Notice is not a statutory takedown notice

24   because the "takedown process" in § 512 "permits the opposing party to submit a counter-notification."

25   ZOOX, INC.'S REPLY IN SUPPORT
     OF ITS MOTIONS TO DISMISS          8          No. 5:22-cv-05821-BLF
     AND STRIKE

Opp'n at 10, 11. But this is of no import because Plaintiff was permitted to submit a counternotification and simply chose not to. Plaintiff pleads that Epic communicated with Plaintiff and explained the Content was removed from its marketplace and expressed a willingness to restore the Content if Zoox and Plaintiff could resolve their dispute. SAC ¶ 12. Courts in the Ninth Circuit have held such communications sufficient to permit a party to submit a counternotification. *See Tine Bak*, 2020 U.S. Dist. LEXIS 252901, at *14, *15 (counternotification permitted by communication from Apple encouraging resolution of the parties' dispute). Even accepting Plaintiff's arguments, DMCA preemption still applies because noncompliance with the procedures outlined in § 512(g) only means the service provider may not be entitled to a safe harbor from infringement liability, not that the DMCA does not apply. *Martin v. Tumblr, Inc.*, No. 15-cv-8338, 2017 U.S. Dist. LEXIS 236462, at *12-13 (S.D.N.Y. Feb. 10, 2017). The same is true for any alleged deficiencies in a statutory takedown notice. *Tine Bak*, 2020 U.S. Dist. LEXIS 252901, at *15. The State Law Claims are thus preempted.

### 2. The Litigation Privilege Bars the State Law Claims

Plaintiff asserts the litigation privilege does not apply because Zoox did not act in good faith. This argument lacks any merit because it misunderstands the good faith requirement. Plaintiff mistakenly treats the good faith required by the litigation privilege as akin to the good faith negating liability in the context of a § 512(f) claim—but they are not the same thing. The good faith inquiry of Plaintiff's § 512(f) claim is whether Zoox had a subjective good faith belief in the *truth* of its statement to Epic that the Content was infringing. *See Moonbug*, 2022 U.S. Dist. LEXIS 33613, at *28 (subjective bad faith required for § 512(f) claim means acting "with actual knowledge" of falsity of representation). In contrast, as Plaintiff's own cited authority sets forth, the litigation privilege applies even to knowingly false statements. *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 63 Cal. Rptr. 3d 398, 414 (Cal. 2007). The court in *Action Apartment* explained:

> It is important to distinguish between the lack of a good faith intention to bring a suit and *publications which are made without a good faith belief in their truth*, i.e., malicious

publications. *The latter, when made in good faith anticipation of litigation, are protected* as part of the price paid for affording litigants the utmost freedom of access to the courts.

*Id.* (emphasis added).

All of the alleged examples of "bad faith" that Plaintiff points to are asserted to evidence bad faith solely because Zoox's statements are allegedly misrepresentations that are "false" or "misleading." Opp'n at 12 (citing SAC, ¶¶ 25, 26, 34, 35, 42-44 and ECF 77-1 ("Shande Decl."), ¶¶ 3-6). But that does not impact the application of the litigation privilege because even knowingly false or objectively baseless statements are protected. So even accepting Plaintiff's arguments of "bad faith" as true—that "high level Zoox executives acknowledge[ed] that their claims against [Plaintiff] had no merit" (*see* Opp'n at 12 (citing Shande Decl., ¶¶ 3-6)), or that Zoox made "false and misleading representations" to Epic (*see* SAC ¶¶ 25, 26, 34, 35, 43)[1]—the litigation privilege *still* applies, and the State Law Claims are barred. *See, e.g.*, *Niantic, Inc. v. Glob.*  ++, No. 19-cv-03425-JST, 2020 U.S. Dist. LEXIS 61327, at *14, *15 (N.D. Cal. Jan. 30, 2020) (dismissing state law claims as barred by the litigation privilege because "[w]hether there is a good faith basis for [the] claims is 'irrelevant to the inquiry of whether the litigation privilege is applicable.'").

Applying the correct legal standard—whether Zoox's communications were made with a good faith investigation and anticipation of litigation—it is clear from Plaintiff's own pleaded facts the litigation privilege bars the State Law Claims.[2] Plaintiff pleads that Zoox told Epic it was "potentially

---

[1] Zoox disagrees with this but posits Plaintiff's allegations solely for purposes of a motion to dismiss. However, as discussed in Section I, the SAC does not plead this or any facts plausibly suggesting this.

[2] Plaintiff alleges that Zoox did not address the legal standard applicable to prelitigation communications. Opp'n at 11, 12. Plaintiff is wrong. Zoox not only addressed this (in both its first and instant motions to dismiss), but submitted a declaration from its Associate General Counsel—the

liable . . . as a contributory infringer" and asserts that Zoox "threaten[ed] to sue for infringement." SAC ¶¶ 25, 34; Opp'n at 4, 9. The Second Takedown Notice is prefaced with "Privileged Settlement Communication Under FRE 408" and states Zoox's anticipation of legal action. Second Takedown Notice; Spinella Decl., ¶ 7. Plaintiff also pleads that Zoox "warned [Plaintiff] that [Zoox] would take *unspecified legal . . . measures* against him should he not comply with Zoox's demand that he voluntarily stop selling the Content." SAC ¶ 21 (emphasis added). Courts in the Ninth Circuit have held similar facts to warrant application of the litigation privilege to bar state law claims, including on motions to dismiss. *See Niantic*, 2020 U.S. Dist. LEXIS 61327, at *12 (dismissing state law claims as barred by the litigation privilege where cease-and-desist letter asserted copyright holder "will take measures it believes are necessary to enforce its rights" if accused infringer ignored letter and continued unauthorized conduct); *Adobe Sys. Inc. v. Coffee Cup Partners, Inc.*, No. C 11-2243 CW, 2012 U.S. Dist. LEXIS 127602, at *36 (N.D. Cal. Sept. 6, 2012) (dismissing state law claims as barred by the litigation privilege where party invoked FRE 408 and made clear its belief its intellectual property rights were being violated and that it was prepared to take other action).

Plaintiff also mistakenly argues the litigation privilege cannot apply "at the pleading stage." Opp'n at 12. But the cases Plaintiff cites involved form letters sent to thousands of people and do not apply here. *See Premier Commc'ns Network, Inc. v. Fuentes*, 880 F.2d 1096, 1103 (9th Cir. 1989) (involving virtually identical form letters sent to thousands of people); *Action Apartment* (involving form eviction notices whose only tie to litigation was being served pursuant to municipal code that authorized suit and would apply the litigation privilege to all eviction proceedings). Under circumstances similar to those here, courts in the Ninth Circuit have rejected Plaintiff's argument and

_____

substance of which Plaintiff does not dispute—detailing Zoox's good faith and serious investigation and anticipation of litigation. *See* Motion at 20; ECF 32-1 ("Spinella Decl."), ¶¶ 4-8.

1  granted motions to dismiss. *See Niantic*, 2020 U.S. Dist. LEXIS 61327, at *11-13 (rejecting argument

2  that "good faith" cannot be resolved at the motion to dismiss stage and applying litigation privilege to

3  bar state law claims based on cease-and-desist letter); *Adobe Sys.*, 2012 U.S. Dist. LEXIS 127602, at

4  *34 (dismissing state law claims premised on cease-and-desist letter as barred by litigation privilege);

5  *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1115 (C.D. Cal. 2015) (same).

6  The litigation privilege thus applies here and bars the State Law claims.

### 3.  The Noerr-Pennington Doctrine Bars the State Law Claims

8          Plaintiff fails to meaningfully address the Noerr-Pennington doctrine, which further bars the

9  State Law claims. Plaintiff only acknowledges the Noerr-Pennington doctrine in passing in a footnote,

10  stating that the doctrine "has no applicability where the sender acted for a sham or illicit purpose."

11  Opp'n at 12 n.4. Presumably Plaintiff is arguing that is the case here with the vague reference to "bad

12  acts," but this argument has no merit. *Id.* The sham exception requires Plaintiff to plead facts plausibly

13  showing that the Second Takedown Notice was "objectively baseless," or that it was in fact nothing

14  more than an attempt to interfere directly with the business relationships of a competitor. *Fitbit, Inc.*

15  *v. Laguna 2, LLC*, No. 17-cv-00079-EMC, 2018 U.S. Dist. LEXIS 2402, at *31 (N.D. Cal. Jan. 5,

16  2018). Plaintiff has not—and cannot—plead any such facts.

17          On the first requirement, Plaintiff has failed to plead any facts that would plausibly suggest

18  Zoox's statements were objectively baseless. As a basic predicate, Plaintiff would have had to plead

19  basic facts about the nature of the Content—and Plaintiff again chose not to do so. *See, e.g.*, ECF 66

20  (Motion Hearing Tr.) at 18:19-21 (The Court: "[S]o I don't even know anything about the images that

21  Zoox claims to own and the images that are used in the game [Plaintiff's Content]. That's not

22  plead[.]."). The only facts that are plead—that Plaintiff was hired to create digital urban scenery for

23  Zoox and separately created the same on the side—negates any inference of objective baselessness.

24  SAC ¶¶ 6, 8; *see UMG Recordings*, 117 F. Supp. 3d at 1114 (dismissing claims as barred by the Noerr-

25

1    Pennington doctrine because claimant failed to plead facts plausibly suggesting statements in cease-

2    and-desist letter were objectively baseless). On the second requirement, Plaintiff's pleaded facts

3    altogether confirm the sham exception does not apply. The SAC pleads that Plaintiff is not a competitor

4    and the Content "is well outside the scope of Zoox's business, actual or potential," meaning Zoox

5    could not be acting with the anticompetitive purpose required by the sham exception. SAC ¶ 7.

6        The absence of any factual allegations is fatal to Plaintiff's argument under normal pleading

7    standards, and even more so here because of the heightened standard required to by the Ninth Circuit

8    to plead the sham litigation exception. *Fitbit*, 2018 U.S. Dist. LEXIS 2402, at *31 ("[F]or the sham

9    litigation exception, '[t]he Ninth Circuit has established a heightened pleading requirement.'").

10           **4.   The State Law Claims Fail Because They Arise From Zoox's Efforts to Enforce**

11                **its Intellectual Property Rights**

12        Plaintiff's Opposition confirms the threadbare allegations in the SAC fail to satisfy the pleading

13    standards of *Iqbal* and *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*,

14    550 U.S. 544 (2007). Plaintiff's tortious interference claims allege no facts supporting a plausible

15    inference that Zoox acted with anything but a legitimate business interest in safeguarding its

16    intellectual property rights, which defeats Plaintiff's tortious interference claims as a matter of law.

17    *See Lown Cos. v. Piggy Paint, LLC*, No. 1:11-cv-911, 2012 U.S. Dist. LEXIS 111527, at *11 (W.D.

18    Mich. Aug. 9, 2012) ("[S]everal courts have held that contacting a third party over legitimate business

19    concerns such as a . . . copyright infringement cannot form the basis of a tortious interference claim.").

20    Plaintiff asserts in its Opposition that it disputes Zoox's good faith but pleads no facts supporting a

21    contrary inference. While the Court must draw all reasonable inferences in Plaintiff's favor, Plaintiff

22    is still required to set forth enough facts from which an improper motive may be inferred. *Iqbal*, 556

23    U.S. at 680. As pleaded, the SAC neither alleges nor provides a basis to infer that Zoox acted with

24

25

anything but a legitimate desire to protect its rights. Indeed, the contrary is true—the pleaded facts show that Zoox rightfully believed and acted on its belief that it owned the Content.

Courts regularly grant motions to dismiss tortious interference claims when a legitimate business purpose is evident, as is the case here. *See Jain v. Unilodgers, Inc.*, No. 21-cv-09747-TSH, 2022 U.S. Dist. LEXIS 102532, at *7-8 (N.D. Cal. June 8, 2022) (dismissing tortious interference claim because the complaint failed to plead facts showing a malicious or bad faith purpose); *Power Analytics Corp. v. Operation Tech., Inc.*, No. SA CV16-01955, 2017 U.S. Dist. LEXIS 226665, at *71-74 (C.D. Cal. Dec. 7, 2017) (dismissing tortious interference claim because the complaint failed to allege that the defendants acted for purposes unrelated to a legitimate business interest); *Lown*, 2012 U.S. Dist. LEXIS 111527, at *4 (dismissing tortious interference claim based on Facebook takedown notices); *Dollar Tree Stores Inc. v. Oyama Partners, LLC*, No. C 10-00325, 2010 U.S. Dist. LEXIS 49537, at *11-12 (N.D. Cal. Apr. 26, 2010) (dismissing tortious interference claim where defendant "act[ed] with a legitimate business purpose"); *Cobra Cap. LLC v. RF Nitro Commc'ns, Inc.*, 266 F. Supp. 2d 432, 439 (M.D.N.C. 2002) (dismissing complaint because it failed to raise an inference of an illegitimate business interest).

Plaintiff's prospective economic advantage interference claim also fails because the SAC identifies no wrongful conduct proscribed by some constitutional, statutory, regulatory, common law schemes. *Drink Tank Ventures LLC v. Real Soda in Real Bottles, Ltd.*, 286 Cal. Rptr. 3d 333, 342-344 (Cal. Ct. App. 2021). The "bodies of law" that Plaintiff points to—Cal. Labor Code § 2870, 17 U.S.C. § 101, Cal. Civ. Code § 44 and Cal. Bus. & Prof. Code § 17200 (*see* Opp'n at 14 (citing SAC ¶ 36))— are facially insufficient. As the Court previously determined, Cal. Labor Code § 2870 is a defense of unenforceability to a contract action and is not an independent cause of action. Order at 8. Plaintiff does not assert any cause of action under 17 U.S.C. § 101, and the Court previously dismissed with prejudice Plaintiff's copyright infringement claim. Order at 7. Cal. Civ. Code § 44 is a cause of action

1  for defamation, which is not asserted in the SAC. And Cal. Bus. & Prof. Code § 17200 is California's

2  Unfair Competition Law (UCL) that only "'borrows' violations of other laws" to make them

3  independently actionable. *Dollar Tree*, 2010 U.S. Dist. LEXIS 49537, at *21. Plaintiff cannot rely on

4  the UCL without identifying the "borrowed" law, which Plaintiff fails to do. *Id.*

5      For this reason, Plaintiff's UCL clam also fails. *See Tuck Beckstoffer Wines LLC v. Ultimate*

6  *Distribs., Inc.,* 682 F. Supp. 2d 1003, 1019-20 (N.D. Cal. 2010) ("[W]here a plaintiff cannot state a

7  claim under [a] 'borrowed' law, it cannot state a UCL claim either."). Plaintiff also fails to sufficiently

8  pleads an unfair business practice. *See* Opp'n at 14 (citing SAC, ¶¶ 11, 25, 26 and Shande Decl., ¶¶ 3-

9  6). The discrete communications Zoox had with Plaintiff and Epic regarding a singular instance of

10 Plaintiff's misconduct do not qualify as a "business practice" within the meaning of the UCL. *See*

11 *Swanson v. EMC Mortg. Corp.*, No. CV F 09-1507 LJO DLB, 2009 U.S. Dist. LEXIS 107912, at *33

12 (E.D. Cal. Oct. 29, 2009) (dismissing UCL claim because "complaint lack[ed] allegations of ongoing

13 wrongful business conduct or a pattern of such conduct").

14 **III.   CONCLUSION**

15     Zoox respectfully requests that the Court dismiss with prejudice Plaintiff's § 512(f) claim

16 (Count Two), strike the State Law Claims (Counts Five, Six, and Seven), and deem Zoox a prevailing

17 defendant entitled to recover its attorney's fees and costs under the anti-SLAPP statute.

18 Respectfully submitted, this 9th day of February, 2024.

19                                                LEE & HAYES, P.C.
                              By:  _____*/s/ Hala Mourad*_____
20
21                                                Hala Mourad
                                     Attorney for Defendant Zoox, Inc.
22

23

24

25