UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TAVERSHIMA SHANDE,<br><br>    Plaintiff,<br><br>v.<br><br>ZOOX, INC.,<br><br>    Defendant. | Case No. 22-cv-05821-BLF<br><br>**ORDER DENYING MOTION TO DISMISS DMCA CLAIM UNDER RULE 12(b)(6); AND GRANTING MOTION TO STRIKE STATE LAW CLAIMS UNDER CALIFORNIA'S ANTI-SLAPP STATUTE**<br><br>[Re: ECF 71] |

Plaintiff Tavershima Shande ("Shande") filed suit against his former employer, Defendant Zoox, Inc. ("Zoox"), after a dispute arose regarding the parties' respective rights to certain digital content. Shande was employed by Zoox for more than five years as a technical artist, creating digital street scenery of San Francisco for use in training Zoox's self-driving vehicles. During the same period, Shande also created and copyrighted digital street scenery of San Francisco for use in videogames. Shande offered the digital videogame content for sale through an online marketplace operated by non-party Epic Games, Inc. ("Epic"). Zoox objected, and terminated Shande when he refused to stop selling the digital videogame content. Zoox submitted a takedown notice to Epic pursuant to the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C § 512, which resulted in Epic's removal of Shande's content from its marketplace.

Shande claims that Zoox's takedown notice and related conduct was in bad faith. His operative second amended complaint ("SAC") asserts federal claims for declaratory relief and violation of the DMCA, as well as state law claims for interference with contractual relations and prospective economic advantage, and for violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.

Zoox moves to dismiss the DMCA claim under Federal Rule of Civil Procedure 12(b)(6) and to strike the state law claims under California's anti-SLAPP statute, California Code of Civil Procedure § 425.16. For the reasons discussed below, the motion to dismiss the DMCA claim is DENIED, and the motion to strike the state law claims is GRANTED.

**I.   BACKGROUND**

Shande filed the complaint in this action on October 6, 2022, alleging federal and state law claims arising out of Zoox's takedown notice and related conduct, and filed a first amended complaint ("FAC") on January 3, 2023. The Court granted Zoox's motion to dismiss the FAC and terminated Zoox's concurrent anti-SLAPP motion without prejudice. *See* Order Granting Motion to Dismiss FAC, ECF 67. The Court indicated that the state law claims asserted in the FAC appeared to be based on communications that would qualify for protection under the anti-SLAPP statute, and emphasized that any amended pleading should either eliminate claims based on allegations of protected activity or should allege such claims with adequate specificity. *See id.* at 13. The Court advised Shande "that if he is unable to meet the requirements of § 425.16, reasonable attorneys' fees for all tasks Defendant Zoox devotes to a successful motion to strike are mandatory." *Id.*

The operative SAC was filed on September 7, 2023, asserting claims for declaratory relief (Claim 1); knowing misrepresentation under the DMCA, 17 U.S.C. § 512 (Claim 2); intentional interference with contractual relations (Claim 5); intentional interference with prospective economic advantage (Claim 6); and unfair competition under California's UCL, Cal. Bus. & Prof. Code § 17200 (Claim 7).[1] *See* SAC, ECF 69. The claims are based on the following allegations.

Shande is a resident of Burlingame, California. *See* SAC ¶ 2. Zoox is a Delaware corporation with its principal place of business in Foster City, California. *See id.* ¶ 3. Between January 2017 and March 2022, Shande was employed by Zoox as a Staff Technical Artist. *See id.* ¶ 6. In that role, he used Zoox-supplied software to create digital street scenes for use in training Zoox's self-driving vehicles to navigate an urban environment. *See id.* During the same period,

---

[1] Shande elected not to renumber his claims after dismissal of Claims 3 and 4 without leave to amend.

1   Shande created digital urban scenery for use in videogames, which the SAC refers to as "the
2   Content." *See id.* ¶ 7. Shande created the Content on his own time, using his own equipment and
3   software. *See id*. Shande registered his copyright in the Content with the United States Copyright
4   Office in October 2022. *See id.* Shande sold and distributed the Content to customers on Epic's
5   Unreal Engine marketplace. *See id.*

6   Taking the position that the Content infringes its rights, Zoox demanded that Shande stop
7   all sales of the Content. *See* SAC ¶¶ 8-9. Shande explained to Zoox that he created the Content
8   on his own time, without using any material belonging to Zoox, and that the Content does not
9   infringe Zoox's rights. *See id.* Zoox rejected Shande's explanation and stated that it would treat
10  Shande's refusal to stop selling the Content as a *de facto* resignation of employment. *See id.* ¶ 9.
11  Shande refused to stop selling the Content and Zoox terminated his employment. *See id.*

12  In April 2022, Zoox submitted a takedown notice to Epic pursuant to the DMCA. *See*
13  SAC ¶ 10. The takedown notice is not attached as an exhibit to the SAC, but Zoox provides a
14  copy of the takedown notice with its motion. *See* Mourad Decl. Ex. 2 (April 2022 Takedown
15  Notice), ECF 71-4. The Court considers the takedown notice under the incorporation by reference
16  doctrine. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is
17  not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff
18  refers extensively to the document or the document forms the basis of the plaintiff's claim.").
19  Shande alleges that, "In that notice, Zoox falsely communicated to Epic that the Content infringed
20  upon images embedded in its autonomous vehicle software which Shande had helped create as
21  part of his employment with Zoox." *Id*. Epic suspended the sale of Shande's Content in response
22  to the takedown notice. *See id.* Shande submitted a counter-notice disputing Zoox's takedown
23  notice, triggering a 10-day deadline for Zoox to file a copyright infringement suit. *See id.* Zoox
24  did not file a copyright infringement suit, and Epic restored the Content for sale on its site. *See id.*

25  In May 2022, Zoox sent a further communication to Epic representing that: "(1) Shande
26  used knowledge and skills he acquired at Zoox to create the Content; (2) that he began selling the
27  Content on the Unreal Engine marketplace only after his employment with Zoox had concluded;
28  (3) that the Content is owned by Zoox under the work-made-for-hire doctrine under federal

copyright law; (4) that copyrightable material created by Shande during non-work hours belongs to Zoox as a matter of law because graphic artists such as Shande have no 'after hours' in which to create works of their own; and (5) that Epic was potentially liable under applicable law as a contributory infringer for not removing the Content from its marketplace." SAC ¶ 11.  The May 2022 communication is not attached as an exhibit to the SAC, but Shande provides a copy of the May 9, 2022 letter from Zoox to Epic with his opposition to Zoox's motion. *See* Shande Decl. Ex. A (May 9, 2022 Letter), ECF 77-1.  The Court considers the May 9, 2022 letter under the incorporation by reference doctrine. *See Ritchie*, 342 F.3d at 908.  Epic again removed the Content from its marketplace, refunded payments for the Content to Shande's customers, and advised Shande that an equivalent sum would be withheld from the proceeds of other product sales made by Shande on the Unreal Engine marketplace until all amounts Shande had received for the Content had been offset. *See id.* ¶¶ 11-12.

Zoox moves to dismiss the DMCA claim under Rule 12(b)(6), and to strike the state law claims under California's anti-SLAPP statute.  The Court first takes up Zoox's motion to dismiss the DMCA claim (Claim 2) under Rule 12(b)(6), and then it turns to Zoox's motion to strike the state law claims (Claims 5, 6, and 7) under California's anti-SLAPP statute.[2]

## II. MOTION TO DISMISS DMCA CLAIM

Zoox moves to dismiss Shande's DMCA claim (Claim 2) under Rule 12(b)(6).

### A. Legal Standard

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (internal quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[2] In the event the Court does not grant its anti-SLAPP motion, Zoox brings an alternative motion to dismiss the state law claims under Rule 12(b)(6).  Because it finds the anti-SLAPP motion to be well-taken, the Court need not address the alternative motion to dismiss the state law claims.

4

**B.     Discussion**

"[T]he DMCA contains a number of measures designed to enlist the cooperation of Internet and other online service providers to combat ongoing copyright infringement." *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1003 (9th Cir. 2004). As relevant here, the DMCA provides a mechanism for a copyright owner to counter online infringement by submitting a takedown notice to the online service provider. *See id.* The takedown notice must satisfy specific requirements, including among other things "[i]dentification of the material that is claimed to be infringing" and "[a] statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law." 17 U.S.C. § 512(c)(3).

A copyright owner who submits a takedown notice in bad faith is liable for resulting damages incurred by the alleged infringer. *See* 17 U.S.C. § 512(f). The DMCA provides that:

> Any person who knowingly materially misrepresents . . . that material or activity is infringing . . . shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer . . . who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing[.]

17 U.S.C. § 512(f). In order to state a claim under § 512(f), the plaintiff "must allege (1) a material misrepresentation in a takedown notice that led to a takedown, and (2) that the takedown notice was submitted in subjective bad faith." *Moonbug Enter. Ltd. v. Babybus (Fujian) Network Tech. Co.*, 2022 WL 580788, *7 (N.D. Cal. Feb. 25, 2022) (citing *Rossi*, 391 F.3d at 1005). "A copyright owner cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake." *Rossi*, 391 F.3d at 1005. "Rather, there must be a demonstration of some actual knowledge of misrepresentation on the part of the copyright owner" in submitting the takedown notice. *Id.*

With respect to the first element, a material misrepresentation in a takedown notice that led to a takedown, Shande alleges that "[i]n its take-down notice, Zoox knowingly and materially misrepresented to Epic that the Content infringed imagery contained in Zoox's autonomous vehicle software." SAC ¶ 18. Shande also alleges that "[i]n response, Epic temporarily suspended access to the Content on its site, depriving Shande of proceeds from such sales." *Id.* Those

allegations are sufficient to satisfy the first element of a § 512(f) claim.

The Court previously dismissed Shande's DMCA claim for failure to satisfy the second element, that the takedown notice was submitted in subjective bad faith. *See* Order Granting Motion to Dismiss FAC at 5-6. The Court concluded that it was unclear from the allegations of the FAC whether Zoox acted with subjective bad faith when it sent the takedown notice to Epic. *See id*. The Court pointed to allegations in the FAC, and assertions in Shande's opposition to Zoox's motion to dismiss the FAC, which suggested that Zoox had a good faith belief that it owns the Content. *See id*. The Court cautioned Shande that "[i]f Zoox subjectively believed the statements in the takedown notice sent to Epic, Zoox cannot be held liable under the DMCA even if those statements ultimately prove to be untrue." *Id*. at 6 (citing *Rossi*, 391 F.3d at 1005). The Court granted leave to amend so that Shande could clarify his bad faith allegations. *See id*.

Shande has cured the defect identified by the Court by including in the SAC new allegations that Zoox knew its asserted rights in the Content were without basis when it sent the takedown notice to Epic, and that Zoox acted with subjective bad faith in sending the takedown notice. For example, Shande alleges in the SAC that "Zoox's take-down notice asserted that the Content infringed upon its copyrighted 'images . . . embedded into a program used by Zoox in its autonomous vehicles' operating software'" even though Zoox knew that assertion to be false. SAC ¶ 19. Shande claims "Zoox knew that Epic would more readily take down the Content in response to a simple allegation of copying, as opposed to a convoluted work-made-for-hire argument. . . ." *Id*.

Shande also alleges that Zoox's knowledge of the falsity of its take-down notice is demonstrated by the contemporaneous comments of high-ranking company officials. *See id*. ¶ 20. According to Shande, "a Zoox Director and Technical Program Manager told the company's Associate General Counsel for IP and Technology that the Content was 'different from what [Shande] was doing at Zoox' and had been created using 'old school videogame techniques.'" *Id*. In addition, the company's co-founder and Chief Technology Officer allegedly "told Shande that 'it's not like you broke some federal law,' while intimating that the company's real concern was that a competitor might utilize the Content to create a demonstration video which would facilitate

6

1    its ability to obtain venture funding." *Id*.

2            These new allegations are sufficient to satisfy the second element of a § 512(f) claim. The
3    Court finds unpersuasive Zoox's argument that Shande's allegations should be rejected as
4    implausible. While Zoox correctly points out that a § 512(f) claim may be rejected as implausible
5    when it is contradicted by the DMCA takedown notice itself, *see Moonbug*, 2022 WL 580788 at
6    *8, Zoox has not established such a contradiction here. For example, Zoox argues that Shande's
7    assertion that Epic relied on "a simple allegation of copying" because it was more persuasive than
8    "a convoluted work-made-for-hire argument" is contradicted by the fact that the April 2022
9    takedown notice expressly referenced the work-for-hire doctrine. Zoox's argument ignores that
10   the April 2022 takedown notice focused primarily on Shande's alleged copying of images
11   embedded in Zoox's software – that is, on a simple allegation of copying. *See* Mourad Decl. Ex. 2
12   (April 2022 Takedown Notice). The April 2022 takedown notice referenced the work-for-hire
13   doctrine only obliquely in a statement that "Zoox never gave permission to its employees to post
14   or use any of the copyrighted works created during the course of employment." *Id*. The Court
15   finds that Shande's allegations are not contradicted by the April 2022 takedown notice. The May
16   2022 letter did focus on the work-for-hire doctrine. *See* Shande Decl. Ex. A (May 9, 2022 Letter).
17   However, Zoox's decision to focus on the work-for-hire doctrine in a later communication does
18   render implausible Shande's allegation of bad faith based on the Zoox's allegedly false
19   representations in the April 2022 takedown notice.

20           Zoox cites a number of other asserted inconsistencies between Shande's allegations of bad
21   faith and the April 2022 takedown notice and/or the May 2022 letter. The Court finds that those
22   asserted inconsistencies do not rise to the level of contradictions that would warrant rejecting
23   Shande's § 512(f) claim as implausible. Accordingly, Zoox's motion to dismiss Shande's DMCA
24   claim (Claim 2) for failure to state a claim is DENIED.

25   **III.   MOTION TO STRIKE STATE LAW CLAIMS**

26           Zoox moves to strike Shande's state law claims under California's anti-SLAPP statute.
27   Those claims are interference with contractual relations (Claim 5), interference with prospective
28   economic advantage (Claim 6), and violation of California's UCL (Claim 7).

United States District Court
Northern District of California

### A. Legal Standard

"Under California's anti-SLAPP statute, a defendant may bring a special motion to strike a cause of action arising from constitutionally protected speech or petitioning activity." *Barry v. State Bar of California*, 2 Cal. 5th 318, 320 (2017). An anti-SLAPP motion may be brought against state law claims pending in federal court. *See Gunn v. Drage*, 65 F.4th 1109, 1119 (9th Cir. 2023) ("[W]e have repeatedly affirmed the applicability of California's anti-SLAPP statute in diversity cases."); *In re Bah*, 321 B.R. 41, 46 (B.A.P. 9th Cir. 2005) ("[A]pplication of the anti-SLAPP statute to pendent state law claims is appropriate.").

"The analysis of an anti-SLAPP motion proceeds in two steps." *Barry*, 2 Cal.5th at 321. "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them." *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016). Only "[i]f the court determines that relief is sought based on allegations arising from activity protected by the statute" is the second step reached. *Id.* At the second step, "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." *Baral*, 1 Cal. 5th at 396.

### B. Discussion

#### 1. Step One

"The first prong of the anti-SLAPP analysis involves two related inquiries: (1) whether the Complaint alleges activity protected by section 425.16 and (2) whether the cause or causes of action alleged arise from those activities." *Gunn*, 65 F.4th at 1120-21 (internal quotation marks and citation omitted). "[T]he question is only whether a defendant has made out a *prima facie* case that activity underlying a plaintiff's claims is statutorily protected." *Id.* at 1121 (internal quotation marks and citation omitted).

Shande's state law claims for interference with contractual relations (Claim 5), interference with prospective economic advantage (Claim 6), and violation of California's UCL (Claim 7) are based on the May 9, 2022 letter Zoox sent to Epic. *See* SAC ¶¶ 25, 34, 42. Accordingly, the question before the Court is whether Zoox has made out a *prima facie* case that the May 9 letter constitutes protected activity under the anti-SLAPP statute. Zoox characterizes the May 9 letter as

a second takedown notice under the DMCA. Numerous cases hold that sending a DMCA takedown notice is an activity protected by § 425.16. *See, e.g., Moonbug,* 2022 WL 580788, *12; *Beyond Blond Prods., LLC v. Heldman*, No. CV 20-5581 DSF (GSJx), 2021 WL 4859972, at *5 (C.D. Cal. Feb. 8, 2021).

The DMCA sets forth the requirements for a takedown notice, providing that the notice "must be a written communication provided to the designated agent of a service provider that includes substantially" certain required elements. 17 U.S.C. § 512(c)(3); *see also Cinq Music Grp., LLC v. Create Music Grp., Inc.*, No. 2:22-cv-07505-JLS-MAR, 2023 WL 4157446, at *2 (C.D. Cal. Jan. 31, 2023). The required elements include: "(i) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed"; "(ii) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site"; "(iii) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material"; "(iv) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted"; "(v) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law"; and "(vi) A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed." 17 U.S.C. § 512(c)(3).

The May 9, 2022 letter from Zoox to Epic appears to be a written communication to the service provider that includes substantially all of these elements. Even if the May 9 letter is not considered a separate DMCA takedown notice, other courts in this district have considered similar follow-up letters to be part and parcel of the DMCA takedown process and thus entitled to protection under California's anti-SLAPP statute. *See, e.g., Moonbug*, 2022 WL 580788 at *12-15. Accordingly, the Court finds that Zoox has made a *prima facie* showing that the May 9 letter

9

1  constitutes protected activity under the anti-SLAPP statute.

2  Shande argues that the May 9 letter was neither a DMCA takedown notice nor part of the DMCA takedown process. According to Shande, "Zoox's May 9, 2022 letter sought to persuade Epic to halt sales the old-fashioned way: by threatening to sue for infringement." Opp. at 9, ECF 77. Shande argues that such a threat, from one private company to another, does not implicate a public issue or question of public interest that would qualify for protection under the anti-SLAPP statute. *See id*. Zoox argues persuasively that even if Shande were correct that the May 9 letter did not constitute a second DMCA takedown notice or a part of the DMCA takedown process, the May 9 letter still constituted protected activity under the anti-SLAPP statute because it was a communication to enforce Zoox's intellectual property rights. "Communications made to enforce intellectual property rights . . . are protected by the anti-SLAPP statute even if the alleged infringer initiated the lawsuit." *Cove USA LLC v. No Bad Days Enterprises, Inc.*, No. 8:20-cv-02314-JLS-KES, 2021 WL 3568251, at *4 (C.D. Cal. July 2, 2021). Moreover, communications that impact large online communities fall within the protection of the anti-SLAPP statute. *See Complex Media, Inc. v. X17, Inc.*, No.: CV 18-07588 SJO (AGRx), 2019 WL 2896117, at *4 (C.D. Cal. Mar. 4, 2019).

Accordingly, the Court finds that Zoox has satisfied its step one burden to make out a *prima facie* case that the activity underlying Claims 5, 6, and 7 – sending the May 9, 2022 letter – is statutorily protected.

### 2. Step Two

At the second step, "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." *Baral*, 1 Cal. 5th at 396. Zoox asserts four grounds in support of its contention that Shande cannot meet his burden at the second step of the anti-SLAPP analysis: first, the state law claims are preempted by the DMCA; second, the state law claims are barred by California's litigation privilege; third, the state law claims are barred by the *Noerr-Pennington* doctrine; and fourth, Shande has not plausibly alleged, and cannot present evidence to, at least one element of each state law claim. The Court finds that the first and second grounds are dispositive, and does not reach the others.

1    Zoox first asserts that Shande cannot meet his Step Two burden because his state law
2 claims are preempted by the DMCA. As discussed above, Zoox has shown that the May 9 letter
3 upon which the state law claims are based properly may be characterized as a DMCA takedown
4 notice. State law claims based on a DMCA takedown notice are preempted by the federal DMCA
5 statutory scheme. *See Moonbug*, 2022 WL 580788 at *13-14; *Online Policy Grp. v. Diebold, Inc.*,
6 337 F. Supp. 2d 1195, 1206 (N.D. Cal. 2004). Shande's state law claims thus appear to be
7 preempted, meaning that Shande cannot meet his burden to show that those claims are legally and
8 factually sufficient.

9    Zoox next asserts that even if the May 9 letter is not considered to be a DMCA takedown
10 notice, Shande cannot meet his Step Two burden because his state law claims are preempted by
11 California's litigation privilege, codified at California Civil Code § 47(b). The litigation privilege
12 "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants
13 or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that
14 have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 212
15 (1990). If all of these requirements are met, § 47(b) operates as an absolute privilege, barring all
16 tort claims with the exception of malicious prosecution. *See id*. 215-16. "Any doubt about
17 whether the privilege applies is resolved in favor of applying it." *Kashian v. Harriman*, 98 Cal.
18 App. 4th 892, 913 (2002).

19    It appears on the face of the May 9, 2022 letter that all four prongs of the test for
20 application of the litigation privilege are satisfied. With respect to the first prong, the May 9 letter
21 expressly stated that Zoox was considering litigation against Shande, specifically, seeking
22 injunctive relief against him. *See* Shande Decl. Ex. A (May 9, 2022 Letter). The letter also stated
23 that Epic might be contributorily liable for assisting in Shande's allegedly unauthorized and
24 infringing distribution of materials in which Zoox claims ownership. *See id.* "The privilege is not
25 limited to statements made during a trial or other proceedings, but may extend to steps taken prior
26 thereto, or afterwards." *Action Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal. 4th 1232,
27 1241 (2007) (quotation marks and citation omitted); *see also Rubin v. Green*, 4 Cal. 4th 1187,
28 1194 (1993) ("[N]umerous decisions have applied the privilege to prelitigation

11

1    communications[.]"). With respect to the remaining prongs, Zoox is authorized by law to seek
2    protection of its own asserted intellectual property rights (second prong). The May 9 letter was
3    sent to achieve that object (third prong). And the May 9 letter clearly had some connection or
4    logical relation to the contemplated legal action against Shande and/or Epic (fourth prong).

5        Shande cites *Action Apartment Assn*. for the proposition that "[a] prelitigation
6    communication is privileged only when it relates to litigation that is contemplated in good faith
7    and under serious consideration." *Action Apartment Assn.*, 41 Cal. 4th at 1251. Shande points to
8    his own conclusory allegations and declaration statements that Zoox acted in "bad faith" when
9    sending the May 9 letter. *See* SAC ¶¶ 26, 35; Shande Decl. ¶ 5. Shande's argument fails to
10   distinguish between "the lack of a good faith intention to bring a suit" and "publications which are
11   made without a good faith belief in their truth, i.e., malicious publications." *Action Apartment
12   Assn.*, 41 Cal. 4th at 1251. "The latter, when made in good faith anticipation of litigation, are
13   protected as part of the price paid for affording litigants the utmost freedom of access to the
14   courts." *Id*. "This policy consideration is not advanced, however, when the person publishing an
15   injurious falsehood is not seriously considering litigation." *Id*. At most, Shande has suggested
16   that the portions of the May 9 letter asserting Zoox's ownership of the Content were made without
17   a good faith belief in their truth. Such malicious publications are absolutely privileged when made
18   when litigation is seriously considered. *See Action Apartment Assn.*, 41 Cal. 4th at 1251. Shande
19   has not alleged or provided evidence that Zoox was not seriously considering litigation when it
20   sent the May 9 letter. To the contrary, Shande's own declaration makes clear the despite the
21   asserted admission of Zoox executives that Shande is in the right, Zoox was seriously threatening
22   to "take unspecified legal or extra-legal measures" against Shande in the event he refused to stop
23   selling the Content. Shande Decl. ¶ 6. Under these circumstances, the Court finds that Shande has
24   failed to satisfy his burden to show that his state law claims are legally and factually sufficient,
25   even if the May 9, 2022 letter is not considered to be a DMCA takedown letter.

26       Zoox's motion to strike the state law claims (Claims 5, 6, and 7) under California's anti-
27   SLAPP statute is GRANTED.
28

**IV.   ORDER**

(1) Zoox's motion to dismiss the DMCA claim (Claim 2) under Rule 12(b)(6) is DENIED;

(2) Zoox's motion to strike the state law claims (Claims 5, 6, and 7) under California's anti-SLAPP statute is GRANTED; and

(3) This order terminates ECF 71.

Dated:  May 21, 2024

_____
BETH LABSON FREEMAN
United States District Judge